### CHICAGO, R. I. & P. R. Co. v. ZIRKLE.

No. 10075.—Opinion Filed Nov. 18, 1919.

(Syllabus by the Court.)

**1. Negligence—Elements.**

To constitute actionable negligence where the alleged wrong is not willful and intentional, three essential elements are necessary: First, the existence of a duty on the part of the defendant to protect the plaintiff from injury; second, failure of the defendant to perform that duty; and third, injury to the plaintiff resulting from such failure.

**2. Same—Question for Jury.**

What is or is not negligence is ordinarily a question of fact for the jury, and where the standard of duty is not fixed but variable, and shifts with the circumstances of the case, it is incapable of being defined as a matter of law, and where there is sufficient evidence it must be submitted to the jury to determine what it is and whether it has been complied with.

**3. Same.**

The determination as to what constitutes ordinary care, reasonable prudence, and the like, is for the jury, unless the facts are such that all reasonable men must draw the same conclusion.

**4. Same—Contributory Negligence.**

Section 6, art. 23 of the Constitution (sec. 355 Williams' Const.), which provides that the defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall at all times be left to the jury, constitutes the jury the tribunal to determine these defenses.

Error from District Court, Marshall County; Jesse M. Hatchett, Judge.

Action by Mrs. Anna Zirkle against the Chicago, Rock Island and Pacific Railway

Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Raymond A. Tolbert, C. O. Blake, and R. J. Roberts, for plaintiff in error.

Ledbetter, Stuart, Bell & Ledbetter, for defendant in error.

RAINEY, J. Mrs. Anna Zirkle, administratrix of the estate of Charles Zirkle, deceased, instituted this action in the district court of Marshall county against the defendant, Chicago, Rock Island & Pacific Railway Company, to recover damages caused by a mail truck being moved by one of defendant's employees across Zirkle's foot causing serious injuries, as a result of which, it is alleged, he died on May 27, 1914. The petition alleges two causes of action. The first cause of action is for damages accruing to deceased during his life time and surviving to the plaintiff as administratrix of his estate. The second cause of action is for $25,000.00 damages to his heirs for his death. On the first cause of action plaintiff recovered a judgment for the sum of $1,250.00, from which the defendant railroad company has appealed, alleging that there is not any evidence in the record showing primary negligence on the part of the defendant railroad company, and that the record shows contributory negligence as a matter of law.

There is very little conflict in the evidence and the circumstances of the injury are practically undisputed. The evidence shows that the deceased, Charles Kirkle, was employed under Mr. C. E. Gunn in the post office department of the United States government, and that in the course of the deceased's employment it was his duty and custom to deliver mail bags to the cars of the defendant railway company at its depot in El Reno, Oklahoma, and to receive from its cars mail in bags to be taken to the post office in said city. The north and south line of the Rock Island Railway Co., extending from Chicago, Illinois, to Dallas, Texas, crosses the east and west line of railroad of said company from Memphis, Tennessee, to El Paso, Texas, at El Reno, where a large quantity of mail is unloaded from the trains on one line and transferred to the trains on the other line. The through mail was unloaded from the mail cars on defendant's train onto a truck and either placed on connecting trains or delivered to the transfer station or terminal station, for which purpose the United States government had for some time been using a building adjoining the trucks and station. The deceased's duties related to the handling of the local mail only. The mail coach usually stopped at the terminus of a street between the express office and the depot, which only extended to the track, as it had not been opened up beyond the station. There was a platform or pavement there on which trucks had been placed for the use of the transfer men. The way the mail was customarily handled was for one of the employes of the company to place a truck by the car door and the mail was unloaded out of the car onto the truck. Either Mr. Gunn or Mr. Zirkle would go to the truck in order to secure the bags containing the El Reno mail and they would stand just as close to the truck as they could get. The mail clerk in the car would come to the door and say: "Here's your pouch," and hand it to the party who had come after it—either Mr. Gunn or Mr. Zirkle. Sometimes the clerk would toss it to them and if the bag was heavy sometimes the man on the truck would take hold of it and hand it over to them. In loading the truck it was the custom of the transfer man to load one end and then move the truck and load the other end. On the occasion of the injury one Ralph Tyson was in charge of the truck, and the particular truck in use at that time was about 8 feet long and 4 feet wide, and had steel-rimmed tires. Its top was about even with the car door. There was about one hundred pounds of mail on the truck, which was from one-third to one-half full. The truck was on the brick platform or sidewalk between the depot and express office. With reference to the way in which the injury was inflicted Tyson testified as follows:

"Q. Did you have occasion to move the truck about that time? A. Yes, sir. Q. What was the occasion of your moving it? A. Well, I had the place full on the truck where I was loading it and started to move it to keep loading. Q. Now state how you started to move it and where you were located at the time you were moving it? A. Well. I was on top of the truck and had the truck pulled along side of the car and I just taken hold of the side of the car to move the truck one way or the other. I won't say which way, for I don't remember. Q. Well, what did you do to the truck? A. Well, I just kind of give it a shove and moved it. Q. Gave it a shove? A. Yes, sir. Q. By taking hold of the car? A. Yes, sir. Q. Did you look in the direction that you were moving the truck? A. Why, I don't know as I did. Q. Was anything said by anyone immediately about the time you moved the truck? A. Well, the best I can remember I heard Mr. Zirkle say to move, the truck, that it was on his foot —'on my foot'—so I just gave it another shove. Q. So you just gave it another shove? A. Yes, sir. Q. After you heard Mr. Zirkle say, 'Move the truck; it is on my foot?' Mr. Moore: Oh— Q. Let me get the expression exact then—when Mr. Zirkle said to move the truck, 'it is on my foot,' what did you do? A. I just gave the truck another

shove. Q. Were you looking at Mr. Zirkle when you moved the truck? A. No, sir. Q. Did you notice him after you had pushed the truck immediately after he spoke about it being on his foot? A. I don't know that I particularly noticed more than just heard him say to move the truck, that it was on his foot. Q. What was your statement as to whether or not you looked in the direction that you first moved the truck, did you look in the direction that you were moving it? A. Well, —well, I didn't think I did. * * * Q. As I understand, those trucks are high enough so to be even with the mail car door? A. Almost. Q. That is with the floor of the mail car? A. Yes, sir. Q. And when you went to move it you were standing on the truck? A. Yes, sir. Q. And caught hold of the side of the car—? A. And gave it a shove. Q. Pulled it far enough so that you could load the part that had not yet been loaded? A. Yes, sir. Q. And that was the movement that you made at that time? A. Yes, sir."

Bearing in mind the well-settled rule in this jurisdiction that in an action of this nature this court will not disturb the judgment of the trial court where the competent evidence and inferences that the jury may reasonably draw therefrom reasonably support the judgment, can we say there was no primary negligence? The occurrence of the injury itself carries with it no presumption of negligence, and it is incumbent upon the plaintiff to establish the fact that the defendant has been guilty of negligence from which the injury proximately resulted. St. Louis & S. F. R. Co. v. Fick, 47 Okla. 530, 149 Pac. 1126. This court has repeatedly declared the rule in this jurisdiction to be that where the alleged wrong is not willful and intentional three essential elements are necessary to render the defendant liable: First, the existence of a duty on the part of the defendant to protect the plaintiff from injury; second, failure of the defendant to perform that duty; and third, injury to the plaintiff proximately resulting from such failure. The plaintiff's specific allegations of negligence are that while the deceased was engaged in the due and regular performance of his duty incident to his employment and while he was situated on the platform of the depot at said place waiting on one of said cars containing mail, one of the agents and servants of the defendant who was in charge of one of the trucks of the said defendant used in the placing of bags of mail on said cars, and taking them from said cars, "pushed, pulled or rolled one of the wheels of said truck over and onto the right foot of said Charles Zirkle while said Charles Zirkle was in or near said truck in the discharge of his duties as aforesaid, * * *" and "failed to give said Charles Zirkle any notice or warning of

his intention to roll or move the wheel of said truck, and was guilty of negligence in rolling and moving the wheel of said truck over the said foot of Charles Zirkle without any notice or warning to said Charles Zirkle."

Counsel for plaintiff and defendant seem to agree that it was the duty of the defendant railway company to use ordinary care to make the defendant's premises and the means of approach and departure therefrom and other accessories safe for the use of the deceased in discharging the duties of his employment, and to use ordinary care in the use of the instrumentalities employed by it to facilitate the handling of the mail.

It is insisted by counsel for plaintiff that it was the duty of the defendant company to have notified or warned the deceased before moving the truck, and that in failing so to do it did not use ordinary care for his safety. This we cannot say as a matter of law; neither can we say as a matter of law that the omission of the defendant's employe to discover the deceased's presence and then to notify or warn him was not negligence. It has repeatedly been held by this and other courts that what is or is not negligence is ordinarily a question of fact for the jury, and where the standard of duty is not fixed but variable, and shifts with the circumstances of the case, it is incapable of being defined as a matter of law, and where there is sufficient evidence it must be submitted to the jury to determine what it is and whether it has been complied with. Ponca City Ice Co. v. Robertson, 67 Oklahoma, 169 Pac. 1111; City of Cushing v. Stanley, 68 Oklahoma, 172 Pac. 628; Dickinson v. Granbery, 71 Oklahoma, 174 Pac. 776.

Taking into consideration the fact that Tyson, the employe in charge of the truck, had knowledge of the customary manner in which the deceased received the mail and that the deceased might be expected to be at or near the track at the time the same was moved, we can readily understand how the jurors, as reasonable men, could draw the conclusion that Tyson failed to exercise ordinary care in moving the truck without first looking to see if the deceased was in a place of danger; and if he had looked he would have discovered deceased's peril, which would have made it incumbent upon him to notify or warn deceased. It is only when reasonable men could not draw different conclusions respecting the question of negligence that the court is warranted in taking the question of negligence from the jury. City of Cushing v. Stanley, supra.

The remaining assignment of error, "that the deceased was guilty of contributory negli-

gence as a matter of law," is without merit. Whatever the rule may be in other jurisdictions, it is well settled under sec. 6, art. 23 (sec. 355, Williams' Const.) of the Constitution of Oklahoma that the defense of contributory negligence shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury. A few of the cases in this jurisdiction to this effect are Wichita Falls & N. W. R. Co. v. Woodman, 64 Oklahoma, 168 Pac. 209; St. Louis & S. F. R. Co. v. Boush, 68 Oklahoma, 174 Pac. 1036; Thorp v. St. Louis & S. F. R. Co., 73 Oklahoma, 175 Pac. 240.

The judgment of the trial court is, therefore, affirmed.

OWEN, C. J., and PITCHFORD, McNEILL, and HIGGINS, JJ., concur.