MEALY-WOLFE DRILLING CO. et al. v. LAMBERT.

No. 34864.    May 5, 1953.

Rehearing Denied June 9, 1953.

*256 P. 2d 818.*

Horsley, Epton & Culp, Wewoka, and Monnett, Hayes, Brown & Bullis, Oklahoma City, for plaintiffs in error.

Frank Seay, Seminole, for defendant in error.

ARNOLD, J. Willie Mae Lambert, the widow of William Fred Lambert, deceased, commenced this action in the superior court of Seminole county against the Mealy-Wolfe Drilling Company, S. R. Mealy and W. W. Wolfe, co-owners, and the First National Bank & Trust Company of Tulsa, executor of the estate of S. R. Mealy, deceased, to recover damages for the wrongful death of her said husband.

In substantial accord with the allegations of her petition that defendants failed to furnish deceased a reasonably safe place in which to work and reasonably safe appliances with which to do the work, and specific allegations of negligence in this connection, plaintiff's evidence reasonably tends to show: that the deceased was employed by Mealy-Wolfe Drilling Company as a tooldresser; that on January 23, 1948, he was working southwest of Davenport on a Cardwell drilling-in unit belonging to defendants; that he was working on the tour beginning at 11:30 p.m.; that the night was cloudy and cold, and spitting snow; that L. J. Goodman, the driller, was the only other person working this tour; that the deceased and Goodman were stringing up tubing tools, in preparation for running tubing in the morning; that it was necessary to tie the tubing line to the drilling line in order that one might trail behind the other through one of the pulleys at the top of the derrick and thus both lines be wound on the drum; that the two wire lines were tied together by means of a "soft rope", producing an irregularity at this point in the line; that when this point in the line reached the pulley at the top of the derrick the line jumped out of the pulley, making it necessary to climb the derrick to place the line back in the sheave; that this was the work of the tooldresser but Goodman, the driller, offered to make the climb; that deceased refused the offer and climbed the derrick himself; that within five or six minutes after deceased started up the derrick Goodman heard a groan and turning his head saw deceased falling practically even with his face; that deceased fell on a "sudding arm" of the rig crosswise; that thereafter Lambert did not speak; that he died as a result of the injuries sustained in this fall; that deceased was an experienced oil field worker; that there was no illumination of the mast although floodlights for this purpose are used in the Mid-Continent area and oilfields; that there was no lighting provided on this rig except lights on the rig floor itself, about 10 to 12 feet above the ground; that, under such circumstances, one who is up in a derrick at night and who looks down to the rig floor will be blinded, but such condition would not exist if the derrick were properly lighted; that there was a type of guard rail or wicket which was adapted for use on derricks such as this one which, had it been on the ladder here, would have prevented deceased's fall; that the derrick and the ladder which deceased had to climb were covered with congealed oil and were dirty, oily, and greasy; that the derrick and ladder had never been washed down on this job; that to climb up the derrick de-

ceased had to climb the "A" frame and then step on the ladder leading up the derrick, which began about 16 feet above the ground; that the ladder was fastened to the mast by angle irons; that some of the rungs were completely gone, some of the ends were torn loose, and at one point the main stringer of the ladder itself was broken in two and when it was stepped on at this point it would flip; that the ladder was crooked and bent and very greasy; that there were other methods, in common use in this area, by which deceased could have been lifted to the top of the derrick to replace the line in the pulley and thus eliminate the necessity of climbing the slick, oily broken ladder at night; that deceased could have been lifted to the top of the derrick with no chance of his falling either by the cat-line or by a saddle on the drill stem; that from the standpoint of safety the work should have been deferred until daylight, as it was unsafe to string up to do a tubing job at night with moonlight as the only illumination.

Defendants' evidence was in some respects corroborative of plaintiff's evidence, but on many points was in direct contradiction thereof.

Defendants' demurrer to the evidence and motion for directed verdict were overruled. At the conclusion of all the evidence the judge instructed the jury and the jury brought in a verdict in favor of plaintiff. Judgment was entered on the verdict. Motion for new trial was overruled, provoking this appeal.

Defendants contend that there was no evidence tending to show the proximate relationship between the acts of negligence alleged and the injuries complained of. The evidence is circumstantial. No one saw deceased fall, and no one testified as to the exact cause of the fall. Proximate cause, like any other fact, may be established by circumstantial evidence. All plaintiff has to do is to make it appear more probable that the injury came in whole or in part from defendants' negligence than from any other cause. St. Louis & S.F.R. Co. v. Darnell, 42 Okla. 394, 141 P. 785. There is evidence to show that deceased had climbed up into the derrick, that the lighting was insufficient, that the ladder was broken and defective, that it was slick and greasy, that at one point it was broken in two, that there was no safeguard to prevent a fall, and the inference that any one or a combination of one or more of these factors caused the fall is a reasonable one. The exact point of the beginning of the fall is not shown by the evidence but the lapse of time would indicate that it started from the ladder, which began 16 feet above the derrick floor.

The question of proximate cause is one for the jury if there is any evidence reasonably tending to show proximate relationship. When there is doubt as to which of several probable causes produced the injury the cause of the injury is properly left to the jury. If the evidence is reasonably sufficient to show that the negligence alleged and proven more probably caused the injury, the question must be submitted to the jury. Petroleum Iron Works Co. v. Wantland, 28 Okla. 481, 114 P. 717. In this case the conclusion that one or more of the acts of negligence of defendant caused the injury is more consistent with the facts than that something else did. The inference of causal connection springs reasonably and directly from the facts in evidence. There is evidence to sustain the conclusion of greater probability that the injury came from defendants' negligence than from any other cause. Especially is this true in this case in view of the testimony on insufficient lighting. We cannot say as a matter of law that the evidence in this case does not reasonably tend to show that the place was not a safe place to work and that some one or more of the features constituting it an unsafe place to work was not the more probable cause of decedent's fall and injury. See Highway Construction Co. v. Shue, 173 Okla. 456, 49 P. 2d 203.

Defendant also urges error in the failure of the court to give its requested instruction No. 9 to the effect that if the equipment was the same kind or nature that was used by other reasonably careful operators in the same business defendants would not be guilty of negligence. Instead, the court instructed the jury that the exercise of reasonable care in the furnishing of a safe place to work was the test but in this connection instructed the jury that it must consider the testimony introduced as to customary appliances and methods used in that area. Essentially the same instruction was attacked in Southern Drilling Co. v. McKee, 171 Okla. 409, 42 P. 2d 265, and approved by us.

The court gave two instructions which advised the jury that the driller was a vice-principal for whose negligence the defendant would be liable and defendant points to these instructions as error. While there is no evidence in the record which would make the driller, Goodman, a vice-principal under the definition given in Chap-tan Drilling Co. v. Myers, 203 Okla. 642, 225 P. 2d 373, whether he was or was not a vice-principal is entirely irrelevant here. It is obvious that the error, if any, would militate against the plaintiff, not the defendant, and the error is certainly harmless as to defendant.

The court gave instruction No. 15, as follows:

"You are instructed that the deceased was an employee of the defendants and entitled to all the protection that the law gives to an employee, and in this connection you are instructed that the relation of master and servant existed, and that it was the duty of the master or the defendant, in this case, to furnish the deceased in this case a reasonably safe place to work, a reasonably safe method and manner of doing the work and to provide reasonable safe guards, and you are further instructed in this connection that if you find from the evidence in this case by a preponderance thereof, that the deceased was injured while in the exercise of ordinary care and prudence, and in obedience to the orders of his superiors, and that such injuries caused his death, was the result of the negligence of his employer, acting through its vice principal, in instructing him to perform duties in a dangerous place, or if in obedience to such orders *or instructions from his superiors he was placed in a position of peril, then in the instance your verdict should be* for the plaintiff."

Defendants object to the italicized portion of this instruction on the ground that there was no definition of the word "peril", that there was no requirement that defendants be negligent, and that the effect of the instruction was that defendants would be liable if they were negligent, or if the climbing by decedent was perilous without regard to any negligence of defendant.

After giving the above instruction, the court gave the following instruction:

"Gentlemen of the Jury, as a further instruction in this law suit, you are instructed that in Instruction No. 15, you were instructed by the Court 'that the deceased was an employee of the defendants and entitled to all the protection the law gives to an employee, and that the relationship of master and servant existed, and that it was the duty of the master, or the defendant in this case, to furnish the deceased a reasonably safe place to work, a reasonably safe method and manner of doing the work, and to provide reasonable safe guards.'

"You will notice that the word or words 'safe guards' were spelled in Instruction No. 15 as two separate words, when in fact they should have been used as one word 'safeguards'. You are now instructed that it was not the intention of the Court to infer or to state in Instruction No. 15 that it was the duty of the defendants to furnish protection guards or guard rails upon the well drilling unit used by the defendants and the deceased at the time of the fatal accident, *it only being the duty of the defendant to furnish the deceased with a reasonably safe place to work, a reasonably safe manner and method of doing the work and to provide reasonable safe tools and appliances with which to perform the work.*"

628

In giving this latter instruction the court corrected any error inherent in the first instruction. He feared the jury might misinterpret the use of the word "safe guards", and after clearing that point up went on to redefine the duty of the master to the servant so there could be no possible chance that the jury might be misled. As shown by the italicized part of the latter instruction quoted above, he clearly limited the duty of the master to the furnishing of a safe place to work, safe tools and methods of doing the work. Taking the instructions as a whole, it cannot be said that they did not correctly state the law or that the jury was misled thereby.

Affirmed.