## BROOME

v.

## ATCHISON, T. & S. F. RY. CO.

No. 35755.

Supreme Court of Oklahoma.

Nov. 3, 1953.

Rehearing Denied April 27, 1954.

F. C. Swindell, A. D. Mason, W. P. Huckin, Jr., Tulsa, for plaintiff in error.

Rainey, Flynn, Green & Anderson, Oklahoma City, for defendant in error.

PER CURIAM.

Parties are referred to herein as in the trial court.

Plaintiff, Tally A. Broome, sued defendant, Atchison, Topeka and Santa Fe Railway Company for damages resulting from injuries received when a freight train on which he was riding as an employee allegedly suddenly slowed down, causing him to fall as he was climbing into the cupola of the caboose of the train. Plaintiff was a brakeman employed by defendant railway company. The accident happened in New Mexico and the action was brought in this jurisdiction under the terms of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

Plaintiff's evidence was to the effect that he boarded the caboose of the train as it pulled out of Belen, New Mexico, after having handed the engineer a "slow" order directing him to proceed at a speed of 10 miles per hour through Madrone, a station about 2 miles from Belen. The plaintiff went into the caboose and, pursuant to his duties, started to climb into the cupola to signal the engineer. He had almost completed the climb when there was a sudden jar which caused him to fall. Plaintiff said the jar was caused by "violent slack action", a sort of accordion action common to freight trains which occurs when the engine is suddenly slowed down without applying brakes to the individual cars of the train. He said that he did not know whether the engineer suddenly applied the brakes or shut off the power, and that it was impossible to tell from his position in the caboose. It was shown that "slack action" is an ordinary incident of the operation of freight trains and that a certain amount of it is to be expected. The speed of the train at the time of the alleged slack action was about 10 or 20 miles per hour.

There was testimony from railroad conductors who qualified as experts familiar with the railroad track from Belen through Madrone; in answer to hypothetical questions they said that in their opinion the jar was caused by either the sudden application of brakes to the engine alone, or to a sudden shutting off of power in the engine. The engineer of the train was not called to testify, either in person or by deposition.

At the conclusion of plaintiff's evidence, defendant demurred thereto and the demurrer was sustained; plaintiff thereafter appealed to this court. In his brief, plaintiff argues the single proposition that the court erred in sustaining the demurrer.

From the record, it is apparent that the trial court sustained the demurrer for the reason that, no causal connection between defendant's alleged negligence and plaintiff's injuries was shown—that proximate cause was not established. The court said that in order for the defendant to be liable for injuries due to slack action, plaintiff must prove that the slack action was unnecessary and unusually violent and that there was a total absence of any evidence on either one of these points.

In this we believe the court was correct. A careful examination of the record reveals that there was a total absence of testimony to the effect that the slack action was either unnecessary or unusually violent. Plaintiff himself said that his fall was due to "violent slack action"; he did not testify that it was either unnecessary or unusually violent. The train conductor, testifying for plaintiff, said that he felt the slack action and that it did not jar him much.

In his brief, plaintiff quotes at length from Missouri, K. & T. R. Co. v. Taylor, 69 Okl. 79, 170 P. 1148, 1151 as a case in which a brakeman was involved in a similar accident. However, in that case, it was shown that a conductor and two cattlemen were thrown a distance of several feet against one end of the caboose, and the jar was severe enough to extinguish all lights in the caboose except the conductor's lantern. In the body of the opinion the court said "yet plaintiff * * * relies on evidence of other facts and circumstances" to establish negligence. In the case at hand, there is a total absence of such "other facts and circumstances".

Plaintiff cites several other cases, mostly from other jurisdictions; an examination of them shows that they are all either distinguishable on the facts involved, or that there was positive evidence of negligence on the part of the defendant; they are therefore not applicable here.

▮ See 13 C.J.S., Carriers, § 750, p. 1410, wherein is found the following:

"* * * the jerk or jolt must be unnecessary or unusually sudden or violent; such jerks and jars as are necessarily incident to the use of the conveyance, and are not the result of negligence, will not render the carrier liable for resulting injuries."

See also Missouri, K. & T. R. Co. v. Lynn, 62 Okl. 17, 161 P. 1058, wherein the court said in syllabus 3:

"A passenger on a freight train assumes the ordinary risks of injury from jerks, jars, and jolts incident to the movement of such trains, and, in order to warrant a recovery for an injury sustained from a jolt or jar, must show that such jolt or jar was unusual, extraordinary, or unnecessary."

▮ Since there was no showing that the slack action in the case at hand was unnecessary and unusually violent, and since in the absence of such showing, defendant is not liable, the following rule is applicable:

"Where the evidence as a whole, with all the inferences that can be properly drawn from it, is insufficient to support a judgment in favor of the plaintiff, it is not error to sustain a demurrer thereto." Duncan v. Keechi Oil & Gas Co., 75 Okl. 98, 181 P. 709.

The judgment of the trial court is affirmed.

JOHNSON, V. C. J., and CORN, DAVISON, O'NEAL, and BLACKBIRD, JJ., concur.

WILLIAMS, Justice (dissenting).

On the day in question, plaintiff Broome, a long-time employee of defendant corporation, as rear brakeman on defendant's freight train, consisting of one of its heavier steam engines and a diesel engine and 110 freight cars and caboose, began a trip from Belen, New Mexico toward Amarillo, Texas. Plaintiff immediately before the start of the journey, in his official capacity, received orders for the train to slow down to about 10 miles per hour at Madrone, New Mexico, a point two miles east of Belen, in order that the train could switch tracks and avoid a derailed car or cars in Madrone. Plaintiff delivered the message to the engineer of the train, fulfilled his duties of checking the wheels of the engines and all of the cars of the train to see that none of the wheel brakes were dragging, caught the back end of the caboose, spoke briefly with the conductor, Mr. Manning, and went into the caboose and started to climb up the wall of the caboose by stepping upon and clinging to iron bars affixed to the wall of the car by bolts in order to go into the cupola of the caboose.

The cupola had windows permitting a view to the front and to the rear and to either side.. A part of plaintiff's duties consisted in stepping across an opening in the floor of the cupola from a seat on one side thereof to a seat on the other side thereof when the train would change directions in going around a curve to the left or right, so that he, the brakeman, could observe the cars ahead to see whether or not a "hot-box" was developing on any of the wheels.

The road from the starting point of this journey eastward for a number of miles on past Madrone, was a steady rise to the eastward. There were no dips nor swales between Belen and Madrone. Several witnesses testified that railroad freight cars are not held together rigidly, but have slack between two adjoining cars of from 8 to 12 inches; that this is necessary to permit the cars to turn on curves and that it is an advantage in that the engineer can, prior to starting forward, back his engine and the cars up so that when he is ready to go forward the engine pulls the first car about a foot before it has to pull the weight of the second car and so with the other cars in succession. This backing up process is called "bunching the cars".

Sometimes a train will go down an incline and the engineer will have occasion to shut off the throttle or to put on his engine brakes, thus slowing the engine, but not slowing the individual cars, in which case the cars will tend to overtake the engine and bump into the cars immediately ahead of them. In such a case the bumping is more severe with the cars toward the rear. Sometimes an engineer will open the throttle more or less suddenly and if there is slack between the cars this will tend to cause them to successively start out with a jerk. Likewise, the jerking is worse increasingly toward the rear of the train.

Expert testimony further tended to show that the more slowly a train is proceeding, in case of a sudden stop, the worse the effect of the "slack-action" on a person at the rear of the train, in the event the automatic brakes on all the cars are applied at once, for the reason that there is less momentum of the individual car and the braking, rather than gradual, is sudden. See Gray v. Southern Pac. Co., 23 Cal.2d 632, 145 P.2d 561 at page 567. The evidence further showed that there is no means of communication of any character by which a person at the rear end of a freight train may be advised that the engineer is planning to either shut off the throttle or apply the independent or engine brake or that he intends to apply the automatic brakes which work on the engines and each of the cars.

Plaintiff's testimony was that immediately after he started climbing to the cupola of the caboose of the train in question upon the day in question and as he was reaching the floor of the cupola, having one foot still on the top bar of the series up which he had just climbed, which, by the way, was worn slick by years of usage and the worn-slick condition of which should have been well known to defendant, that he felt a sudden "slack-action"; that he was thrown down and, as he expressed it, he "fell all over the place;" that the private portions of his body struck the top bar up

which he had just climbed, severely injuring such portions of his body and causing him excruciating and intense pain.

The conductor testified that he also felt the effect of the slack-action on this occasion and that he had to grab some bars to protect himself, but that such action was not so much worse than usual, as he expressed it; that he went into the caboose about 5 minutes later where he found the plaintiff, who immediately complained to him of his alleged accident. One of the trainmen took plaintiff to the operator in Madrone and the latter took him to the doctor. The plaintiff went ahead and finished the day, but "dead-headed" back to Belen the next day and was driven by a trainman to his home in Clovis, New Mexico, where he was taken to a company physician and treated and later hospitalized.

The plaintiff's complaint at the beginning was primarily of injuries directly to his testicles and the conductor testified that on an occasion when the two were occupying the caboose, that the plaintiff, in disrobing preparatory to retiring, exhibited his person to the conductor, the evidence concerning which the conductor outlined in his testimony. In the trial, the plaintiff's testimony was to the effect that he had a back injury of the cervical, lumbar and sacral regions of his back. He introduced expert medical testimony demonstrating that he had sustained injuries to the nerves of the cervical region of his back and in the region of his left shoulder blade; that he was apparently impotent; that his apparent impotency was the result of injuries to his nerves, spine and back in the cervical area. Plaintiff's evidence further reasonably tended to show that he is totally and permanently disabled industrially, as a result of defendant's alleged negligence.

Defendant sought to weaken the effect of plaintiff's case by cross-examining him in such a manner as to attempt to show that he had "changed his story". Plaintiff's explanation was that he thought the direct injury to private portions of his person was the cause of his trouble; that he was not a doctor and did not realize that he had sustained an injury to his spinal cord until so advised by physicians; that he had been rendered impotent; that he had lost his sexual desire; that until so advised by physicians he did not know such condition resulted from nerve injury.

At the conclusion of plaintiff's testimony, defendant presented a demurrer to the evidence, whereupon plaintiff, apparently apprehending that the court was about to sustain the same, moved to reopen the case, and permission being granted to do so, produced additional testimony of two expert witnesses each of whom had been in the service of defendant for more than 20 years, and each of whom had been over the portion of the road in question numerous times and was thoroughly familiar with it. They each testified that the road in question from the starting point of plaintiff's journey on the day in question, and for a number of miles on past Madrone, was a steady rise to the eastward; that there were no dips nor swales between Belen and Madrone; that they had been over the portion of the road in question many times and that there would be no reason to expect the sudden stopping of a train as it would be approaching Madrone from the west. It was deducible from this testimony (and other testimony given in this case), of course, that if a train were stopping suddenly at that point or anywhere within several miles of that point, in such a fashion as to cause violent "slack-action", that such stopping in such fashion could well be determined by a jury to be unnecessary and unusually rough and violent.

The defendant, upon announcement by plaintiff of "rest", again interposed its demurrer to the evidence which was by the trial court sustained.

Upon the occasion of ruling upon motion for new trial, the trial judge in his remarks elaborated upon his position, indicating it to be his conception of the holdings "that there may be a recovery for injury to a workman due to slack action where such slack action is caused by negligence of the defendant, but, in order for a jury to find that slack action is due to negligence, the plaintiff must prove: (1) that said slack action was unnecessary, (2) that said slack action was unusually violent." Continuing, the trial court later said, "Since slack action

and jerks on a freight train are usual occurrences and *to be expected by employees riding the train,* especially where such employee *is expecting the train to slow down* at a certain point, and since there were only two methods by the use of which said slack action could be avoided, to require the defendant to slow the train down without any slack action would require it to exercise the highest degree of care for the protection of the plaintiff. The law does not require the defendant to exercise the highest degree of care for his protection. It is required to exercise only ordinary care in this instance; the proof only shows that it failed to exercise the highest degree of * * *". (Emphasis ours.)

Granting that defendant, ordinarily, is required to use reasonable care only, may the trial court presume to perform the office of the jury in making the determination as to whether plaintiff's proof in a given suit shows violation of the duty to use due care or tends only to show violation of the highest degree of care? In the case of Dickinson v. Granbery, 71 Okl. 9, 174 P. 776, (syl., par. 1) we said:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent and what shall constitute ordinary care under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable

men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the courts."

In Chicago, R. I. & P. Co. v. Zirkle, 76 Okl. 298, syl., par. 3, 185 P. 329, we said:

"The determination as to what constitutes ordinary care, reasonable prudence, and the like is for the jury, unless the facts are such that all reasonable men must draw the same conclusion."

The majority, in its opinion, commenting upon action of the trial court said, "The court said that in order for the defendant to be liable for injuries due to slack action, plaintiff must prove that the slack action was unnecessary and unusually violent and that there was a total absence of any evidence on either one of these points. In this we believe the court was correct. A careful examination of the record reveals that there was a total absence of testimony to the effect that the slack action was either unnecessary or unusually violent. Plaintiff himself said that his fall was due to 'violent slack action'; he did not testify that it was either unnecessary or unusually violent. The train conductor, testifying for plaintiff, said that he felt the slack action and that it did not jar him much."

The trial court, continuing his remarks, upon the occasion of over-ruling motion for new trial, as recited in his signed and filed statement said, "There is a total lack of evidence to the effect that this particular slack action or jerk was unusual. On the contrary, a short time after the incident, the plaintiff made a statement to the effect, 'The slack action was no more severe than I have witnessed on many other occasions; at the time of this accident it just happened to catch me at the right time.'"

At first glance, there appears to be somewhat of a conflict between plaintiff's testimony and his former statement. Defendant stresses the point the trial court

apparently leaned rather heavily upon this circumstances. Our statute, 12 O.S. 1951 § 556, provides in part:

"Issues of fact arising in actions for the recovery of money * * * shall be tried by a jury * * *."

Considerable discussion with reference to situations somewhat similar to that in this case are found in 20 Am.Jur., Evidence, Secs. 1181 and 1182. See also Kanopka v. Kanopka, 113 Conn. 30, 154 A. 144, 80 A.L.R. 619. A.L.R. Editor's syllabus, paragraph 1, is as follows:

"The testimony of a party to a fact, unless it amounts to such a stipulation or waiver as to have the force of a judicial admission, is ordinarily no more conclusive upon him than the evidence given by any other witness; and it is the duty of the court or jury to determine the fact not alone from the testimony given by the party, but from all the evidence in the case."

In the case of Moore v. First National Bank of Iowa City, 30 Okl. 623, at page 630, 121 P. 626, at page 629, we said:

" * * * Where the only testimony upon a material issue is that of an interested party, and such testimony is inconsistent or contradictory, unreasonable or improbable, and where the jury may draw inferences therefrom unfavorable to plaintiff or defendant, as the case may be, the court should never direct a verdict but should submit to the jury all controverted questions of fact, under proper instructions. * * *"

It is to be observed that the trial court refers to what the employee was expecting and should expect. All this could amount to would be an inference that plaintiff might be guilty of contributory negligence. Under the constitution of Oklahoma, such question is determinable only by the jury. Article 23, § 6; Chicago, R. I. & P. Co. v. Zirkle, supra.

In a further portion of its opinion, the majority, referring to Missouri, K. & T. Ry. Co. v. Taylor, 69 Okl. 79, 170 P. 1148, states:

"In the body of the opinion the court said 'yet plaintiff * * * relies on evidence of other facts and circumstances' to establish negligence."

In Vol. 6A, West's Oklahoma Digest, Evidence, are found numerous cases cited for the proposition that the jury may reject positive testimony and accept circumstantial evidence, without requiring that the proof rise to a degree of certainty which will exclude every other reasonable conclusion than the one reached by the jury. See City Service Gas Co. v. Eggers, 186 Okl. 466, 98 P.2d 1114, 126 A.L.R. 1278 and Wood Oil Co. v. Washington, 199 Okl. 115, 184 P.2d 116.

In the case of City of Altus v. Martin, Adm'x, Okl., 268 P.2d 228, 229, syl., pars. 3 and 4, we recently said:

"Negligence may be established by circumstantial evidence and the reasonable inferences to be drawn therefrom and the proximate cause of the injury may also be determined from circumstantial evidence.

"Where competent evidence on the question of negligence is introduced, from which reasonable men might draw different conclusions, such question is one for the jury, and under like circumstances the question of proximate cause is one for the jury."

Plaintiff's cause of action is based upon what is usually referred to as Federal Employers' Liability Act, 45 U.S.C.A. § 51, which provides in pertinent part that every common carrier by railroad while engaged in (interstate) commerce, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, (or in case of death of employee to his personal representative for benefit of surviving spouse and children or parents), if such injury (or death) resulting in whole or in part from the negligence of any of the officers, agents, servants or employees of the carrier, or by reason of any defect or insufficiency due to defendant's negligence, in its cars, engines, appliances, etc., or other equipment. Plaintiff's amended petition charges in general terms that defendant was guilty of negligence in

that its engineer upon the occasion complained of by plaintiff, braked the train in question to a halt or slowed it down so rapidly that the slack-action referred to hereinabove occurred.

Defendant, at the trial, and since, has raised some objection that plaintiff's testimony tended to show that the engineer either braked the train to too sudden a halt, or that he abruptly shut off the throttle, implying that gravity, because the train was running uphill, caused it to stop too suddenly, and that the alleged slack-action could have been the result of either of such happenings. Defendant feels it was the duty of plaintiff to know and produce testimony to show which, if either, was the cause of the alleged jar of which plaintiff complained.

It occurs to me that the important thing in that connection is not necessarily *how* such a jar, if any, occurred, in the absence of some proper objection to introduction of testimony upon the ground of variance from the allegation, but *whether* it happened. Numerous cases are cited under note 661 to Section 51, supra, indicating the circumstances under which recovery has been granted in different cases, due to slack action, etc.

A portion of plaintiff's proof, although no allegation with reference thereto was contained in his amended petition, went to the proposition that at the time of the alleged accident, and at a time when he had no warning that such was about to occur, his foot was on the top bar used to mount up into the cupola and that this bar had worn slick from long usage.

In the case of the City of Altus v. Martin, Adm'x, supra, we recently had occasion to further say (syl., par 2)

"When a ladder is fixed permanently to a structure, it is a part of the premises and not a tool within the meaning of the simple tool rule."

The worn condition of the ladder involved in that case was considered by the jury along with the other evidence and figured in this court's determination that the jury was justified in finding defendant in that case guilty of negligence. In this connec-

tion see also Mealy-Wolfe Drilling Co. v. Lambert, 208 Okl. 624, 256 P.2d 818, 820, which was a case wherein we recently held that the fact that a ladder used by workmen in ascending to and descending from the upper portions of the derrick of an oil-well drilling operation was crooked and bent and very greasy, slick and oily, was properly considered by the jury. In that case we said:

"The question of proximate cause is one for the jury if there is any evidence reasonably tending to show proximate relationship. When there is doubt as to which of several probable causes produced the injury the cause of the injury is properly left to the jury. If the evidence is reasonably sufficient to show that the negligence alleged and proven more probably caused the injury the question must be submitted to the jury. Petroleum Iron Works Co. v. Wantland, 28 Okl. 481, 114 P. 717. In this case the conclusion that one or more of the acts of negligence of defendant caused the injury is more consistent with the facts than that something else did. The inference of causal connection springs reasonably and directly from the facts in evidence. There is evidence to sustain the conclusion of greater probability that the injury came from defendants' negligence than from any other cause."

It occurs to me that had this present case been submitted to the jury, the jury might well have considered the condition of the iron bar upon which plaintiff said his foot was resting at the time of the accident, along with the other facts and circumstances in arriving at a determination as to whether defendant was liable.

In Gray v. Southern Pacific Co., 145 P. 2d 561, supra, we have a suit very similar to the case at hand except that there the trainman was killed and practically the whole case of plaintiff had to be proven by circumstantial evidence. The engineer of the train involved in that case disconnected his engine, took on a load of water, again connected to the train and pulled out of the station making about 8 miles per hour Plaintiff's evidence was that he then, and

after going about 250 feet, brought the train to an abrupt halt, throwing plaintiff's deceased, the head brakeman, from the top of a freight car to the ground between two cars, decapitating him and severing an arm. The evidence in that case in several essential respects, was similar to the evidence here. There the court said, 145 P.2d at page 568,

"Under the circumstances we think it is clear that the jury was justified in concluding that defendant was negligent and that its negligence was the proximate cause of the accident."

The case last cited quotes at length from Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 64 S.Ct. 409, 411, 88 L.Ed. 520, as follows, in part:

"Petitioner was required to present probative facts from which the negligence and the causal relation could reasonably be inferred. 'The essential requirement is that mere speculation be not allowed to do duty for probative facts after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.' * * * Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable. * * *"

In the case of Gay v. Hurst, 42 Ga.App. 148, 155 S.E. 346, the Court affirmed a judgment for the administratrix of deceased switchman who was killed by falling between two cars. The court there said 155 S.E. at page 351:

"There is testimony * * * that while he was in the discharge of his duties and at a place where he had a right to be, the engineer suddenly applied great power to his engine at a time when the decedent had no reason to believe he would, and that this caused a sudden jerk which threw Hurst between the cars and brought about his death."

In that case the court quoted from the case of Georgia, Florida & Ala., Ry. Co.

v. Jacobs, 15 Ga.App. 292, 82 S.E. 934, 935, where a *passenger* was thrown from the platform of a passenger coach by a jerk, as follows:

"The evidence clearly showed that there was a 'jerk' while she was on the platform. Whether it was a 'sudden, violent, unusual, and unnecessary' was a question for the jury, under all the attendant circumstances and this court cannot say that there were no facts or circumstances from which an inference could have been fairly drawn by the jury that this jerk was 'sudden, violent, unusual, and unnecessary,' although no witness positively so characterized it."

Southern Railway Co. v. Smith, 221 Ala. 273, 128 So. 228, 229, was a case in which a switchman recovered judgment for personal injuries, paragraph 4 of the editor's syllabus being:

"Negligence, of engineer in giving violent and extraordinary jerk to train causing switchman to fall, held question for jury." (F.E.L.A.)

In the case of Devine v. Chicago, R. I. & P. Ry. Co., 266 Ill. 248, 107 N.E. 595, the administrator obtained affirmation of a judgment for the death of a head brakeman. Therein at page 597 of 107 N.E. the court said:

"* * * the defendant in error claims * * * that no signal was given to stop, but the engineer did stop very suddenly, causing a crash which was heard for a great distance and caused people to leave their occupations and go to see what was the matter; and that in consequence of the suddenness with which the train was stopped the deceased was thrown to the ground and killed. There was evidence fairly tending to support the theory of the defendant in error."

In the case of Missouri, K. & T. Ry. Co., v. Taylor, 69 Okl. 79, 170 P. 1148, 1151, this court had occasion to affirm a judgment for plaintiff for personal injuries allegedly inflicted by the sudden stopping of its train in a negligent fashion. Therein we said:

"When the fact of such a stop and the results accompanying it were es-

tablished, the mere conclusion of a witness testifying to the effect that such stop was violent and unusual was not essential to a finding of the jury that such was the fact. * * * Although no witness testified thereto in so many words, in the light of common observation and knowledge the jury was warranted in finding from the established physical facts that the jerk and jar occasioned by the sudden stopping of the train in the instant case was unusually and extraordinarily violent. The evidence of plaintiff, which is supplemented and corroborated by that of the engineer, in our opinion amply supports a finding that if the engineer had 'bunched' the train, as he testified was proper and right to do in coming to a stop on a grade, the jerk and jar of the caboose causing plaintiff's injuries would not have occurred; and *the obvious inference from his failure so to do was sufficient to send the case to the jury on the issue of primary negligence.*" (Emphasis supplied.)

The plaintiff in that case was, as here, the rear brakeman, and was in the cupola at the time of the alleged accident.

I believe that the conclusions reached in this case by the majority are erroneous. We have the facts and circumstances that the railroad made a gradual, even, assent to the eastward; that there would not be, on any occasion, along there, a reason to stop a freight train suddenly (this as direct testimony from witnesses who had been over the road many times and who were testifying in effect as to the condition and grade of the road; and, also, as above shown, as evidence from experts that, while not present on the occasion complained of by plaintiff, in their opinion, *there could be no reason necessitating a sudden stop or slowing of the train on the date in question*); further, that the train was operated in such a manner as to cause "violent slack-action" as testified to by plaintiff; that such violent slack-action jarred the caboose in which plaintiff was riding; that plaintiff, although a trainman in the employ of the defendant for some

ten years or so, and accustomed to the ordinary jars, jerks and shocks of slack-action, was, due to the unusual violence of the jar that occurred at that time, thrown off balance and "fell all over the place"; that his spinal cord and at least one intervertebral disc of his spinal column, his left shoulder and muscles in the back were injured; that, according to the medical experts, his right leg was injured so that on occasions he would kick out to the right and stumble around, etc; that his right ankle reflex was not normal; that his hands grow numb and are palsied; that his left shoulder was carried high, plaintiff said to relieve constant pain; that the doctors performed a test upon the body of plaintiff by the use of certain tape across his back and causing an electric shock to travel up his spine in such a manner as to cause the rippling, described in the evidence, of the muscles in his left shoulder which would not have occurred in a normal uninjured person; that the doctors and other witnesses observed jerking of muscles in the region of the left shoulder blade, the left portion of the breast and chest and the biceps of the left forearm; that the right testicle of plaintiff was swollen to from one and one-third to one and one-half times as large as normal; that the left testicle was swollen only slightly less; that the right testicle had to be removed in a surgical operation; that some of the nerves, muscles, and tendons in the right groin were swollen to the extent they protruded about the size of two of a man's fingers and for a distance of several inches; that the train conductor himself felt the jar from the slack action on the occasion complained of by plaintiff; that he had to grab hold of something to maintain his balance; that upon his going into the car where plaintiff was within five minutes after such jar, that plaintiff complained to him of his alleged fall.

I sincerely believe that these facts and circumstances were such that the trial court could not properly brush them aside as amounting to no testimony indicating that there was unusually violent slack-action or that the same was unnecessary. This is especially true in view of our hold-

ings in such cases as Moore v. First National Bank of Iowa City, 30 Okl. 623, 121 P. 626, syl. pars. 2 & 3, wherein we said:

"The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith.

"The court may direct a verdict for plaintiff or defendant, as the one or the other may be proper, only where the evidence is undisputed or is, of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict in opposition to it."

See also, Anthony v. Bliss, 39 Okl. 237, 134 P. 1122, syl. par. 1, wherein we said:

"A demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences or conclusions which may be reasonably and logically drawn from the evidence, and upon a demurrer to the evidence the plaintiff is entitled to every inference which the evidence, considered in the light most favorable to him, reasonably tends to prove."

In the case of Carpenter v. Snipes, 203 Okl. 534, 223 P.2d 761, 762, syl., pars. 1, 2, and 3, we recently said:

"A demurrer to the evidence admits every fact which the evidence, in the slightest degree, tends to prove, and all inferences and conclusions which can be reasonably and logically drawn therefrom; and if there is a conflict in the evidence, that which is unfavorable to the party against whom the demurrer is directed is to be considered withdrawn.

"In an action to recover damages for personal injuries, a demurrer to plaintiff's evidence should be overruled where there is competent evidence reasonably tending to support plaintiff's cause of action.

"Where the evidence is such that reasonable men may fairly differ as to whether the facts constitute negligence, the question is one for the jury to decide."

Although the evidence adduced by plaintiff in the trial of this action may or may not be considered as of weak probative value, it is inconceivable to me that same may properly be said not to reasonably tend to show unusually violent slack-action or that same was unnecessary.

I, therefore, respectfully dissent.