**Maryland Casualty Company, Plaintiff-Appellant, v. John Holmsgaard et al., Defendants-Appellees.**

**Gen. No. 10,898.**

Second District.

April 9, 1956.

Released for publication May 14, 1956.

1

Welsh and Welsh, and John T. Holmstrom, Jr., of Rockford, for plaintiff-appellant; John T. Holmstrom, Jr., of counsel.

Maynard & Maynard, of Rockford, for John Holmsgaard, defendant-appellee; Foltz, Haye & Keegan, of Rockford, for Ellis L. Grove, and Ronald Grove, defendants-appellees; Frederick H. Haye, of Rockford, of counsel.

JUSTICE EOVALDI delivered the opinion of the court.

Appellant, an insurance corporation, brought suit for declaratory judgment against the appellees for construction of a certain policy issued by it to the defendant, Ellis L. Grove. The relief asked for in the complaint was two-fold: (1) that the court declare and determine that the company be not required to defend, and (2) that the company be not required to pay any judgment that might be entered against its assured, or his agent, in a suit brought by defendant, John Holmsgaard, against the assured, Ellis L. Grove, and his agent, Ronald Grove, in the circuit court of Winnebago County, Illinois, in Cause No. 65101. The cir-

cuit court by its judgment and order found that appellant was obligated under the policy of insurance to furnish defense and pay any judgment within the limits of its policy obtained against its assured, Ellis L. Grove, or his agent, Ronald Grove, in said suit brought by John Holmsgaard against them. From said judgment and order this appeal is taken.

Plaintiff's contentions are as follows: (1) the policy of insurance in question excluded from coverage property in the insured's hands as a bailee for hire, or in his care, custody, and control; and therefore, by the terms of the policy the company was neither obligated to defend the suit nor to pay any judgment entered against its assured arising out of the occurrence alleged in the amended complaint filed in said Cause No. 65101; (2) that the terms and provisions of the policy of insurance were plain and not ambiguous; and (3) that the judgment and order of the circuit court was contrary to the law.

Defendant, John Holmsgaard, was the owner of a 1954 Dodge four-door sedan on July 20, 1954, and his wife drove this car on the above date to the Gem Welding and Machine Shop owned and operated by Ellis L. Grove to have a trailer hitch installed beneath the car by welding to the frame. The automobile was left in said shop. Holmsgaard's amended complaint alleged that the defendant, Ellis L. Grove, by and through his agent and servant, Ronald Grove, was guilty of various negligent acts or omissions, and as a direct and proximate result of the defendants' negligence, the automobile then and there owned by the plaintiff, while under the sole care, custody and control of the defendants, and while the trailer hitch was being welded to the frame by the defendant, Ronald Grove, as said agent, was set on fire or ignited by the welding torch or welding equipment then and there used by said defendant and said automobile was totally consumed and destroyed by fire. At the trial

3

defendant Holmsgaard asked and was given leave to amend the amended complaint in said Cause No. 65101 on its face by striking out the language "sole custody and control" and inserting in lieu thereof, "while in the possession of the defendants as bailees for hire, . . . ." While the trailer hitch was being welded to the frame by Ronald Grove, as agent of Ellis L. Grove, the automobile was set on fire and totally destroyed.

On October 25, 1953, E. L. Grove, doing business as Gem Welding and Machine Company, was issued Manufacturers' and Contractors' Schedule Liability Policy by the Maryland Casualty Company, which bore number 53–227954 and shows a renewal of identical policies written for prior years. The policy was in effect on July 20, 1954. Ellis L. Grove had paid all premiums due.

The policy states on its face:

"The insurance afforded is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges. The limits of the company's liability against each such coverage and division thereunder shall be as stated herein, subject to all of the terms of this policy having reference thereto.

| Hazards Purposes of Use | Manual Code No. | | Coverage A Bodily Injury Liability | Coverage B Property Damage Liability |
|---|---|---|---|---|
| 1. Premises—Operations | | | Advance Premiums | |
| Welding or Cutting (see attached schedule) | 3428 | | $12.00 MP | $10.00 MP" |

The attached schedule above referred to is as follows:

4

## "Supplement to Item 3 of the Declarations
(For attachment to Schedule Liability Policies 52 and 53)

| Item 3.<br>Purposes of Use | Manual<br>Code<br>No. | Premium<br>Bases | Rates | | Advance<br>Premiums | |
|---|---|---|---|---|---|---|
| | | | Cov-<br>erage<br>A | Cov-<br>erage<br>B | Cov-<br>erage<br>A | Cov-<br>erage<br>B |
| WELDING OR CUTTING—NOC—shop or outside—including incidental machining operations, connected therewith—NPD—welding or cutting performed under air pressure shall be classified and rated as 'Caisson Work . . .' or 'Tunneling . . .' welding or cutting in connection with demolition jobs shall be classified and rated as 'Wrecking . . .'; welding in connection with the erection of iron or steel frame structures or bridges, provided such erection is properly classified under Code Nos. 5067 or 3452, shall be classified and rated under the appropriate iron or steel erection classification | 3428 | $4,000.00 | .072 | .25 | $12.00<br>MP | $10.00<br>MP" |

In said policy plaintiff insured said Ellis L. Grove as follows:

### "Insuring Agreements

I Coverage A—Bodily Injury Liability
Coverage B—Property Damage Liability
To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined.

5

### *Definition of Hazards*

Division 1. Premises—Operations. (1) The ownership, maintenance or use of the designated premises, and all operations which are necessary or incidental thereto, or (2) the maintenance or use of alienated premises as defined herein.

II Defense, Settlement, Supplementary Payments

As respects such insurance as is afforded by the other terms of this policy the company shall

(a) defend in his name and behalf any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company; . . . .

The company agrees to pay the amounts incurred under this insuring agreement, except settlements of claims and suits, in addition to the applicable limit of liability of this policy.

III Definition of 'Insured'

The unqualified word 'insured' includes the named insured and also includes any partner, executive officer, director or stockholder thereof, while acting within the scope of his duties as such.

6

This policy does not apply:

. . . (g) under Coverage B, to injury to or destruction of (1) property owned, occupied or used by or rented to the insured, or (2) except with respect to liability assumed under sidetrack agreements and the use of elevators, *property in the care, custody or control of the insured* (Italics ours) . . ."

The facts are not in dispute. The question presented is whether the exclusion clause (reciting that the policy does not apply, under the coverage for property damage liability, to injury to or destruction of property in the care, custody or control of the insured) relieves the company from furnishing defense or paying any judgment against the insured obtained by Holmsgaard.

Defendants' theory of the case is that the judgment of the circuit court is correct for the following reasons: the loss was sustained during the course of the operations described in the insuring and coverage provisions of the policy; the exclusions of the policy do not, when considered with the other provisions of the policy, deny coverage for loss sustained to Holmsgaard's automobile; the work being done by Grove, the insured, upon Holmsgaard's automobile, was within the coverage provided by the policy and within the hazards insured against; the declarations of the policy providing for the use of the insured premises, being typewritten upon the policy, supersede printed exclusion provisions of the policy; and the construction of the policy sought by plaintiff would result in no coverage to the insured so far as property damage is concerned.

In support of the above contentions, defendants argue (1) that the intention of the whole agreement,

7

expressed in the contract of insurance, is that coverage is provided where damage is sustained to property owned by some person other than the insured; (2) that inconsistent provisions of the policy are resolved in favor of the insured and to provide coverage; and (3) that the provisions of a typewritten rider attached to an insurance policy govern over printed portions.

 Plaintiff does not challenge the correctness of the last two contentions of the defendants. Its answer is, that those principles of law do not apply in cases where there is no ambiguity in the provisions of the policy, or no conflict in the terms of said policy and the provisions of the rider attached to same. Plaintiff's position is correct. There is no ambiguity. There is nothing in the rider attached to the policy which is in conflict with the exclusions appearing in the policy. The reason for attaching the rider to the policy is evident from an examination of the policy as shown by the photostatic copy of same appearing in the record. The form of policy does not have sufficient room on its face to include the necessary terms which appear in the rider. As to the first contention of defendants, we cannot see how these exclusions can be read in any other manner than to bar recovery. Policies should be construed according to the sense and meaning of the terms used and if the language is clear and unambiguous it must be taken in its plain, ordinary and popular sense. Illinois State Trust Co. v. Employees Life Co., 8 Ill.App.2d 455, 131 N.E.2d 789; Zitnik v. Burik, 395 Ill. 182; Yadro v. United States Fidelity & Guaranty Co., 4 Ill.App.2d 477; Bridge v. Massachusetts Bonding & Ins. Co., 302 Ill. App. 1.

 Whether we take the allegation, as shown in the amendment to the amended complaint made at the trial, that the automobile in question was delivered into the possession of Grove, the owner of the welding shop, as bailee for hire, or whether we take the allegation that the car was in Grove's care, custody and con-

trol, the result is the same. Grove had actual possession of the automobile. He had dominion over it. He managed and controlled it at his place of business and was in the act of welding a trailer hitch to the automobile at the time of the damage complained of. Under our statutes, he was entitled to a lien for his services. There can be no doubt that a bailment carries with it the surrender of possession and custody. In 6 Am. Jur., Sec. 27, page 189, the writer states:

"Moreover, it is a generally recognized feature of bailments that possession of the thing bailed is severed from ownership; the bailor retains the general ownership, while the bailee has the lawful possession or custody for the specific purpose of the bailment. Most courts, especially with respect to a bailment for compensation, agree that the bailee's possession of the bailed property in such a case is more than a bare custody and is such as would, for the purposes and during the period of the bailment, give the bailee such control and dominion over it as would entitle him to exclude the possession of others, even that of the bailor."

■■ In the instant case, the pertinent exclusion clause is broken down into two categories: "(1) property owned, occupied or used by or rented to the insured, or (2) . . . property in the care, custody or control of the insured; . . . ." These categories spell out different relationships. The first deals with ownership or incidents thereof. Plainly, if the insured owned or occupied or used or rented an automobile under number (1) above, the exclusion would apply. No coverage would be afforded under the policy to an automobile over which the insured exercised the relationships therein expressed. We here are concerned with exclusion (2), which spells out an entirely different classification of property, that is, property in the "care, custody or control" of the assured. Bailment includes custody and control. Care, custody and control are possessory in nature. The language of the policy is

9

clear. The rule that ambiguous language is to be construed most strongly against the insurer does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists. Yadro v. United States Fidelity & Guaranty Co., supra; Canadian Radium & Uranium Corp. v. Indemnity Ins. Co. of North America, 342 Ill. App. 456, at 473.

The policy and rider in this case contain no inconsistency or ambiguity as applied to the facts. The judgment of the lower court therefore is reversed and the cause remanded with directions to enter a decree in conformity with this opinion.

Reversed and remanded with directions.

DOVE P. J. and CROW, J., concur.