592

W. D. BRUNSON, d/b/a Brunson's Construction Company, Libelant,

v.

IOWA HOME MUTUAL CASUALTY COMPANY, a corporation, Respondent.

No. 2898.

United States District Court
S. D. Alabama, S. D.

Dec. 27, 1963.

Robert T. Cunningham and Richard Bounds, Cunningham & Bounds, Mobile, Ala., for libelant.

Alexander F. Lankford, III, of Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for respondent.

DANIEL HOLCOMBE THOMAS, District Judge.

Pursuant to General Admiralty Rule 59, libelant brings this action, in the nature of a declaratory judgment, against respondent, seeking a determination of whether or not there is coverage under a policy of insurance, issued by respondent to libelant, which would afford libelant protection and defense in two libels filed against him in this court by Stauffer Chemical Company and Sioux City and New Orleans Barge Lines, Inc. Such libels were filed by Stauffer and Sioux City to recover damages occasioned by the sinking of the Barge SC 1515 on or about November 24, 1958, on the Mobile River at Le Moyne, Alabama. Further prosecution of such libels has been stayed, pending a determination of this question of coverage.

The case having come on for trial, and the court, having considered the pleadings, the evidence adduced, the briefs

submitted and the law applicable, makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. On October 1, 1957, libelant entered into a stevedoring contract with Stauffer Chemical Company, whereby libelant was to discharge from barges moored at Stauffer's dock cargoes of bulk sulphur belonging to Stauffer, and transport such sulphur to Stauffer's plant located a short distance away from such dock at Le Moyne, Alabama. Among other things, such contract purposed to impose upon libelant complete responsibility for damage to such sulphur, in the course of discharging and transporting same, from whatever cause (save for an Act of God or the public enemy). In addition, such contract provides that libelant will indemnify and save harmless Stauffer from any and all loss and damage, including attorney's fees, arising out of or connected with libelant's performance of such contract.

2. The procedure adopted by libelant in discharging and transporting such sulphur is as follows: Two loaded sulphur barges would be left at Stauffer's dock by the towing tug. Such tug would spot the first barge to be discharged at Stauffer's dock, with the second barge to be discharged being placed upstream from the first barge. Libelant's employees would then open the hatches of the first barge, and inspect same for signs of leakage or fire. Libelant had available a pump to take care of any leakage found in such barges. By the use of libelant's crane, equipped with a clamshell bucket, the crude sulphur cargo was then taken out of the barge by libelant's employees and placed in libelant's trucks, which then transported the sulphur to Stauffer's plant.

After completing the discharging of the first barge, libelant's employees would sweep the same clean, close its hatches, and by slackening off of lines, shift the barge downstream. Libelant's employees would then shift the second barge into position for discharging in the same manner.

Stauffer's employees did not instruct libelant as to the manner in which such barges would be handled or their cargoes discharged.

3. On March 15, 1958, respondent issued its Comprehensive General-Automobile Liability Policy by and through its Mobile representative. Among the exclusions in such policy to coverage C, relating to property damage liability coverage, are exclusion (a) [1] relating to liability assumed by contract, and exclusion (j) [2] relating to property in the care, custody or control of the insured.

Libelant contends that at the time such policy was issued, respondent's Mobile representative knew of its stevedoring operations at Le Moyne, and also had knowledge of the stevedoring contract itself, and is thereby estopped or has waived any defenses permitted by policy exclusions arising out of a loss incurred in connection with such stevedoring services.

Respondent and its Mobile representative deny that they had any knowledge of either respondent's activities as a stevedore or the Stauffer contract until after the loss occurred. On the policy of insurance, libelant is noted as being in the business of "road construction." In addition, the Stauffer contract was not inserted in the place provided for

---

1. "This policy does not apply: (a) to liability assumed by the insured under any contract or agreement except under coverages A and C (1) a contract as defined herein. * * *"
"Conditions 3. Definitions: (a) Contract. The word 'contract' means, if in writing, a lease of premises, easement agreement, agreement required by municipal ordinance, sidetrack agreement, or elevator or escalator maintenance agreement."

2. "This policy does not apply: (j) under coverage C, to injury to or destruction of * * * (3) * * * property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control * * *."

594

same in the policy, and there is no endorsement to the policy purporting to cover either the stevedoring operations or the Stauffer contract.

■ The court finds that the Stauffer contract was never made a part of the policy in question.

4. On the morning of November 24, 1958, libelant's employees began discharging bulk crude sulphur from the Barge SC 1515 which was moored portside to Stauffer's dock. Such barge had a large forward rake and little or no after rake. In order to maintain the trim of such barge, its cargo was discharged from aft to forward. By the end of the working day of the 24th, about one-half of the cargo had been discharged from such barge, with the remaining one-half being located from about the middle of the barge to its forward rake.

Early in the morning of November 25, such barge and its cargo was found submerged with only about the after one-third being above the water. After the barge was raised, a hole or fracture was found in the plating on the starboard side of the forward rake. The testimony tended to show that the cause of the sinking was due to the fact that before discharging operations were commenced, such hole or fracture was above the waterline, and during or after discharging, the change of trim of the barge put such hole or fracture below the waterline, permitting water to enter and flood the forward rake compartment.

5. The court finds that libelant or its employees had the care, custody or control of the Barge SC 1515 and its cargo during the process of discharging same.

6. In response to a letter from counsel for libelant, respondent denied coverage on the basis of contractual liability exclusion (exclusion (a)), and subsequently denied coverage also on the care, custody or control exclusion (exclusion (j)). The answer filed by respondent incorporates both exclusions, and other defenses based upon the policy of insurance. Libelant contends that respondent's actions in this respect amount to a waiver to assert any exclusion other than (a) as a defense to this action.

7. Subsequently, Sioux City filed its libel (Admiralty No. 2786) against libelant herein, seeking recovery of damages to the Barge SC 1515 in connection with raising and repairing same, loss of use of such barge, etc. Stauffer filed its libel (Admiralty No. 2884) against libelant for damages to the cargo of sulphur, attorney's fees, etc., claimed to be due under the stevedoring contract.

8. At all material times, libelant paid to respondent the premiums due under such policy which was in effect at the time of the loss. Respondent has declined to appear and defend the Sioux City and Stauffer libels.

## CONCLUSIONS OF LAW

■ 1. The subject matter of this cause is within the admiralty and maritime jurisdiction of the court. 28 U.S.C.A. § 1333.

■ 2. Respondent has not waived nor is it estopped from asserting the subject exclusions in the policy (such exclusions relating to coverage, as distinguished from forfeiture) as defenses to this action. C. & L. Rural Electric Cooperative Corp. v. Kincade, N.D.Miss., 183 F.Supp. 935 (1960), affirmed, 5 Cir., 290 F.2d 210; Odum v. Penn Mutual Life Insurance Company, 5th Cir., 288 F.2d 744 (1961); C. E. Carnes & Co. v. Employers' Liability Assur. Corporation, 5th Cir., 101 F.2d 739 (1939); and Mooradian v. Canal Insurance Company, 272 Ala. 373, 130 So.2d 915 (1961).

■ 3. The Barge SC 1515 and its cargo were in the care, custody or control of libelant, and therefore the loss or damage to same was excluded from coverage under the policy by exclusion (j). Maryland Casualty Co. v. Holmsgaard, 10 Ill. App.2d 1, 133 N.E.2d 910 (1956); International Derrick & Equipment Co. v. Buxbaum, 3rd Cir., 240 F.2d 536 (1957) and L. L. Jarrell Construction Co. v. Columbia Casualty Co., S.D.Ala., 130 F. Supp. 436. In the Jarrell case, supra, it was held that although the contractual

liability exclusion did not apply, the exclusion relating to property in the care, custody or control of the insured did apply.

4. By reason of the foregoing, respondent is not obligated to appear, defend or pay any sum or sums resulting from any decree or decrees which might be entered against libelant in Admiralty No. 2786 or No. 2884 on the docket of this court.

Decree in accordance herewith.