HOME AND AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellant, *v.* ESTATE OF SANFORD W. FERREE *et al.,* Defendants-Appellees.

(No. 55758;

First District (3rd Division)—August 9, 1973.

*Rehearing denied November 8, 1973.*

Ernest K. Koehler, of Chicago, for appellant.

Patrick Mahoney, of Chicago, for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff brought this declaratory judgment action in the circuit court of Cook County seeking a declaration that a policy of automobile liability insurance it had issued was not in force on May 13, 1967 while Sanford W. Ferree was driving the vehicle. On that date Ferree was involved in an accident with another vehicle owned by Robert Brown, driven by Riley Lewis and in which Barbara Catalino, Edward Jones and Kathryn McLaughlin were passengers. Sanford Ferree was killed as a result of injuries sustained in the accident. Several lawsuits arising out of the accident were filed against his estate. Defense of these lawsuits was tendered to plaintiff, and it brought this action. After a trial, the trial court dismissed the suit. Upon denial of its post-trial motion, plaintiff appeals.

On July 14, 1966 the policy in question was issued by plaintiff naming Sanford Ferree as the insured. In December, 1966 the policy was endorsed to include Sharon Ferree, his wife. At the same time the Ferrees informed their insurance agent, Joseph Fonte, that Sanford's driver's license had been suspended by the state and he would not be driving the insured vehicle.

At trial Joseph Fonte testified that he handled other insurance matters for the Ferrees. On December 17, 1966 they came to Fonte's office as a result of Sanford's loss of driving privileges. Fonte testified that he had both Ferrees sign an endorsement eliminating coverage while Sanford was driving so that the vehicle could be insured while Sharon or any other eligible person was driving. To accomplish this result, Fonte had the Ferrees sign an endorsement excluding male drivers under 25 years of age from driving the vehicle. As a result of the endorsement the Ferrees received a premium deduction. Fonte gave a copy of the endorsement to the Ferrees and mailed the original endorsement to plaintiff's home office. Fonte received a handwritten note, defendants' exhibit 3, from plaintiff stating that Sanford would remain as a named insured, and that his accidents would count in terms of premium coverage. According to Fonte, this meant that since Sanford was one of

the owners of the vehicle his name would continue on the policy. However, because of the license revocation and the subsequent policy endorsements, he would not be allowed to drive the car.

The endorsements executed by the Ferrees and forwarded to plaintiff's office by Fonte were introduced into evidence as plaintiff's exhibits 1 and 2. The date, May 15, 1967, was typed in as plaintiff's accepted date on these exhibits. Fonte's name was typed in as agent. Fonte testified that the date, May 15, 1967, did not appear on his copy of the endorsement signed by the Ferrees, nor did that date appear on the copies of the endorsement given to the Ferrees on December 17, 1966.

Peter Eres, plaintiff's claim manager, testified that plaintiff received notice of the automobile accident, but denied coverage because it had endorsements signed by the Ferrees that coverage would not be in effect while Sanford was driving. The endorsements had been received from Fonte, who was agent for the Ferrees. The endorsements contained a time stamp on their face showing that they had been received at plaintiff's office on December 19, 1966 at 11:30 A.M. Eres further testified that the date of May 15, 1967 which presently appeared on the endorsements was entered by sheer clerical error after plaintiff was notified of the accident.

Sharon Ferree Hutchison testified that she was Sanford's widow and that she had re-married. She could not positively identify her own signature or the signature of her deceased husband, but it looked like her signature on plaintiff's exhibits. She was not sure she signed the endorsement and did not remember exactly what date she signed them. Sharon further testified that she believed that she did sign something around December 17, 1966, the date shown on the endorsement. She probably did receive some papers from Fonte on the date of signing the endorsements. Sharon also testified that she received in the mail a notice, plaintiff's exhibit 3, changing the make and model of the vehicle insured and changing the classification from 2A to 1C. (Classification 2A permits a male driver under 25 years to drive the vehicle; 1C permits no male driver under 25 years.)

Sharon Hutchinson also testified that on May 9, 1967, Sanford's license revocation was terminated. On that day she testified that she called Fonte and informed him that Sanford's license to drive had been received, and Fonte told her not to worry that there was coverage.

Fonte testified that he had no such conversation with Sharon. He did not receive a call from her, and he denied that he would make such a statement because he knew that there would have to be a new endorsement from plaintiff rescinding the earlier endorsement. There would also be an additional premium required from the Ferrees. Fonte did not know

if plaintiff would agree to cover Sanford because of his driving record, and such a decision would be a judgment to be made by plaintiff's underwriting department.

After hearing closing argument, the trial judge entered an order dismissing plaintiff's suit. The pertinent parts of the order stated as follows: there was no delivery of the accepted copy of the endorsements because the date of May 15, 1967 was typed thereon by plaintiff; therefore a copy of that endorsement with the typed date was not given to the insured and therefore there was no delivery and the endorsement was not in effect; the policy was valid; the endorsement was never effective and coverage existed for the accident of May 13, 1967.

On appeal plaintiff contends that the trial court erred in finding that the endorsement in question was not in effect on the date of the accident. We agree with plaintiff. Defendants, citing *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill.2d 352, 226 N.E.2d 624, maintain that the trial court's findings of fact cannot be disturbed by a reviewing court unless those findings are manifestly against the weight of evidence. However, this argument overlooks the fact that the trial judge made no findings of fact, but rather held as a matter of law that the endorsement was not effective because the date of May 15, 1967, a date subsequent to that of the accident, was typed on its copy of the endorsement by plaintiff.

In our view, the evidence was undisputed that the endorsement had been effectuated, and that under the revised coverage Sanford Ferree had been excluded as an authorized driver of the vehicle. Fonte, the Ferrees' insurance agent, testified that they came to his office and advised him that Sanford's driving privileges had been terminated by the State of Illinois. It is significant to note that the insurer was not attempting to limit its coverage, but that the insured were trying to reduce their premium. Fonte then had the Ferrees sign an endorsement that no male driver under 25 years of age could operate the vehicle, thus excluding Sanford. Fonte further testified that he gave a copy of the endorsement to the Ferrees, kept one for his files and forwarded the original to plaintiff. While Sanford's widow originally testified that she could not positively identify Sanford's or her signature on the endorsement, she eventually testified that she probably received some papers from Fonte on the date she signed the endorsement. She also admitted receipt in the mail of a notice from plaintiff which changed the insurance classification on the vehicle from 2A, permitting operation of the vehicle by a male driver under 25 years of age, to 1C, forbidding such operation. Fonte also testified that the Ferrees received a reduction of premium in return for the endorsement. The endorsment was executed by the Ferrees and thereafter forwarded to plaintiff. Plaintiff in turn changed the coverage

classification and reduced the premium paid by the Ferrees. The endorsement was effectuated, and, under the circumstances, the erroneous placement of the date "May 15, 1967" on the endorsement in plaintiff's possession was of no significance and did not negate the effectiveness of the endorsement.

■■■ Contracts of insurance must be construed according to the sense and meaning of the terms used and if the language is clear and unambiguous, it must be taken in its plain, ordinary and popular sense. (*Maryland Casualty Co. v. Holmsgaard* (1956), 10 Ill.App.2d 1, 133 N.E.2d 910.) An ambiguous provision or equivocal expression whereby an insurer seeks to limit its liability will be construed most strongly against the insurer and liberally in favor of the insured. (*Mosby v. Mutual Life Insurance Co. of New York* (1950), 405 Ill. 599, 92 N.E.2d 103.) However, the rule construing ambiguous provisions strictly against the insurer will not permit distortions of plain language to create a conflict or ambiguity where none exists. (*Miller v. Madison County Mutual Auto. Insurance Co.* (1964), 46 Ill.App.2d 413, 197 N.E.2d 153.) In the instant case, the trial court held that ambiguity existed because there was no delivery of the accepted document. However, delivery was admitted and consideration for the endorsement was received by the Ferrees. Nor was any ambiguity or conflict in the wording of the policy indicated because Sanford remained a named insured after the execution of the endorsement. As an owner, he retained an insurable interest in the vehicle, but did not need to be an insured operator of the vehicle.

Defendants also urge in this court that plaintiff failed to prove that Sanford was under 25 years of age. However, defendants did not raise this issue at trial, and it was apparently conceded that under the insurance policy issued to Sanford, prior to execution of the endorsement he was paying the additional premium necessary for male drivers under 25 years of age.

■■ At trial the only testimony in dispute concerned Sharon's claim that on May 9, 1967, she advised Fonte that Sanford's driving privileges had been restored and that Fonte advised her not to worry that there was coverage. Fonte denied having any such conversation with Sharon. He also testified that he would never make such a statement because, in view of Sanford's driving record, plaintiff's underwriting department would have to make a decision as to whether coverage would be afforded to Sanford as an operator of the vehicle. Fonte further testified that if Sanford's coverage as an operator were to be renewed, an additional premium would be charged by plaintiff. Although, in our opinion, Fonte's testimony appears to be more reasonable than Sharon's in this regard, the trial court made no findings as to this factual dispute, and

it is unnecessary for this court to speculate as to whose testimony was accurate. The undisputed testimony at trial was that Fonte was agent for the Ferrees, and therefore he could not bind plaintiff to afford renewed coverage to Sanford by his statements to Sharon.

For the reasons stated, the judgment of the circuit court of Cook County is reversed, and the cause is remanded with directions to enter judgment in favor of plaintiff.

Judgment reversed and cause remanded with directions.

DEMPSEY, P. J., and SCHWARTZ, J., concur.