## MOORE v. FIRST NAT. BANK OF IOWA CITY.

No. 1175. Opinion Filed January 9, 1912.

(121 Pac. 626.)

1. **BILLS AND NOTES—Presentation and Notice.** In an action by the indorsee of a bill of exchange against the drawee and acceptor thereof, brought in the courts of the Indian Territory, it was not necessary to allege notice of presentation and dishonor, and a complaint which did not contain such allegations was not thereby subject to demurrer.

2. **TRIAL — Taking Case From Jury — Direction of Verdict.** The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith.

3. SAME—Taking Case From Jury—Direction of Verdict. The court may direct a verdict for plaintiff or defendant, as the one or the other may be proper, only where the evidence is undisputed or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict in opposition to it.

4. SAME—Questions of Law or Fact—Credibility of Witnesses. Where the only testimony upon a material issue is that of an interested party and such testimony is inconsistent or contradictory and the replies to questions are evasive and unreasonable, and where the jury may draw inferences therefrom unfavorable to plaintiff or defendant, as the case may be, the court should never direct a verdict but should submit to the jury all controverted questions of fact under proper instructions.

5. SAME—Question of Law or Fact—Credibility of Witnesses. The credibility of a witness and the effect and weight to be given to inconsistent or contradictory testimony are questions of fact to be determined by the triers of fact, whether court or jury, and not a question of law for the court. It is peculiarly within their province to weigh the testimony of the witnesses, as well as all the facts and circumstances tending to corroborate or discredit them, and determine the case according to the preponderance of the evidence.

(Syllabus by Sharp, C.)

Error from Bryan County Court; Chas. A. Phillips, Judge.

Action by the First National Bank of Iowa City against A. W. Moore. From a judgment for plaintiff, defendant brings error. Reversed and remanded.

H. H. Loden, for plaintiff in error.

Crook & Kyle and Porter Newman, for defendant in error.

Opinion by SHARP, C. The defendant in error, plaintiff below, is hereinafter referred to as plaintiff; the plaintiff in error, defendant below, as defendant; and the Rhode Island Manufacturing Company, as the Rhode Island Company.

It was not necessary to allege or prove that the several bills of exchange were protested for nonpayment. These bills of exchange were drawn on and accepted by the defendant, who, if bound at all, was primarily liable; hence no notice of presentation and dishonor was necessary. Daniel on Negotiable Instruments, art. 995; 7 Cyc. 1053. The maker or acceptor of bills of exchange is liable everywhere and at all times, within the statute of limita-

tions, and, as against him, the bringing of the action is a suffi-cient demand. Norton on Bills and Notes, art. 345.

At the conclusion of the testimony, the court peremptorily instructed the jury to return a verdict for the plaintiff. Was this error? On the trial of the case, the plaintiff put in evidence the twelve bills of exchange and the depositions of its cashier and the manager of the Rhode Island Company, the payee and in-dorser of the bills of exchange. Thereupon the defendant intro-duced his testimony tending to establish that the bills of exchange were obtained by means of false and fraudulent representations practiced upon him by the agent and salesman of the payee. This testimony was not denied. Defendant then offered in evidence a second deposition of Lovel Swisher, cashier of plaintiff bank. We have read the deposition with care. It appears that the wit-ness either failed or refused to produce the records of the bank, though subpoenaed so to do; refused to furnish a list or schedule of the names of parties whose notes the bank took at the time that the Moore collateral was delivered; and refused to state in what amount, if any, the Rhode Island Company was indebted to the bank. To numerous questions the witness refused to an-swer; to others he replied that he had already answered; that he did not have to answer; to others he made no response, or gave evasive answers; to others that he was unable to testify without the bank books, but made no effort to get them; declined to give any information as to how many notes of the Rhode Island Com-pany the bank at the time held; refused to examine the records of the bank and furnish counsel with information concerning the renewal of notes given by the Rhode Island Company. As to who was paying the costs of furnishing cost-bond and employing counsel, the witness either refused to answer or made evasive replies. At the time of the last renewal of the note given by the Rhode Island Company, the witness testified that all Moore's notes were past due and uncollectible, but refused to say whether or not the bills of exchange had been delivered back to the Rhode Island Company; stated that he had no correspondence with de-fendant and was not positive that he had sent notices to him at the maturity of the drafts, and did not know that any payments

had been made thereon, and refused to answer numerous questions touching the *bona fides* of the bank's transactions with the Rhode Island Company, to which the Moore acceptances were collateral.

Plaintiff's possession of the acceptances, indorsed to it, was *prima facie* evidence that the same had been acquired in good faith, for value, in the usual course of business, and before maturity. When the defendant introduced evidence tending to show that the bills of exchange had been obtained from him by means of fraud, perpetuated by the agent of the payee, the *onus* then shifted to the bank to show that it had acquired them in good faith, for value, in the usual course of business, and before maturity. *Forbes v. First National Bank,* 21 Okla. 206, 95 Pac. 785.

The question presented to the trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may reasonably be drawn therefrom, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith. Where the evidence is conflicting and the court is asked to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration and totally disregarded, leaving for consideration that evidence only which is favorable to the plaintiff against whom the motion is leveled. *Solts v. Southwestern Cotton Oil Co.,* 28 Okla. 706, 115 Pac. 776; *Frick v. Reynolds et al.,* 6 Okla. 640, 52 Pac. 391; *Richardson et al. v. Fellner et al.,* 9 Okla. 513, 60 Pac. 270; *McGuire v. Blount,* 199 U. S. 142, 26 Sup. Ct. 1, 50 L. Ed. 125; *Marshall v. Hubbard,* 117 U. S. 415, 6 Sup. Ct. 806, 29 L. Ed. 919; *Nutt, Executor, v. Minor,* 18 How. 287, 15 L. Ed. 378; *People v. People's Insurance Co.,* 126 Ill. 466, 18 N. E. 774, 2 L. R. A. 340; *Pullman's Palace Car Co. v. Laack,* 143 Ill. 242, 32 N. E. 285, 18 L. R. A. 215.

The court may direct a verdict for plaintiff or defendant, as the one or the other may be proper, only where the evidence is undisputed or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to

set aside a verdict in opposition to it. *Neely v. Southwestern Cotton Seed Oil Co.*, 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145; *Union Pacific R. R. Co. v. McDonald*, 156 U. S. 276, 14 Sup. Ct. 619, 38 L. Ed. 435; *Elliott v. Chicago, etc., Ry. Co.*, 150 U. S. 245, 14 Sup. Ct. 85, 37 L. Ed. 1068; *Delaware, etc., Ry. Co. v. Converse*, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213; *Phoenix Life Insurance Co. v. Doster*, 106 U. S. 35, 1 Sup. Ct. 18, 27 L. Ed. 65; *Connecticut Mutual Life Insurance Co. v. Lathrop*, 111 U. S. 612, 4 Sup. Ct. 533, 28 L. Ed. 536. Measured by the foregoing rule, it was error for the trial court to direct a verdict for plaintiff.

The testimony of Swisher and Duley, as given in the first depositions without other evidence, would doubtless have been sufficient to have entitled plaintiff to a verdict; hence the necessity of the second deposition, as tending to refute the evidence originally given and to show, as a matter of fact, that plaintiff was not the *bona fide* holder of the acceptances, or, if so, that the principal debt had been discharged. In such cases, it often occurs that the only evidence obtainable on the part of the maker or acceptor of a negotiable instrument is that of the adverse party, who is, of course, interested in the result of the action. While common-law incompetency of parties has been removed by statute, the interest which they have in the result of the trial is a matter to be considered by the jury in weighing the testimony and in determining what force it shall have.

The credibility of a witness and the effect and weight to be given to inconsistent or contradictory oral testimony are questions of fact to be determined by the triers of fact, whether court or jury, and not of law for the court. Where the case is tried before the jury, therefore, it is peculiarly within their province to weigh the testimony of the witnesses, as well as all the facts and circumstances tending to corroborate or discredit them, and determine the case according to the preponderance of the evidence.

If there is one question more peculiarly and exclusively within the province of the jury than any other, it is that of the credibility of witnesses. It is ordinarily for the triers of the facts to determine whether and to what extent the witness shall be be-

lieved, not only where there is conflicting evidence merely, but also where the credibility of witnesses has been discredited by evidence of bias, inconsistent and contradictory statements, and the like. Whether a witness has been discredited is a question of fact, and not of law. A witness may be contradicted by circumstances as well as by the statements of others, contradictory to his own; and, in such cases, neither the court nor the jury is bound to refrain from exercising their own judgment as to the probative value of his testimony. Neither may a jury arbitrarily disregard the testimony of witnesses which is not contradicted or discredited by other evidence or circumstances. The jury should regard the testimony of every witness sworn. They are not obliged to believe it; but it is their duty to give the evidence the weight to which in their opinion, as conscientious men seeking the truth, they believe it entitled. *Brunswick, etc., Ry. Co. v. Wiggins,* 113 Ga. 842, 39 S. E. 551, 61 L. R. A. It is the rule in many jurisdictions that a case depending on oral testimony must be submitted to the jury, though the witnesses are unimpeached and not contradicted; this is on the ground that their demeanor on the stand and like collateral circumstances, which the jury are empowered to consider in arriving at a verdict, may discredit them, especially so when the testimony is that of a witness having an interest in the result of the action, or connected in any way with the party for whom he is called. 30 A. & E. Enc. Law, 1038. In other jurisdictions, a case sustained by unimpeached and uncontradicted evidence may be withdrawn from the jury, if, in the judgment of the trial court, there are no extrinsic circumstances casting discredit upon it; and the mere fact that the witness is a relative of the party for whom he testified, or under contractual relations with him, or interested in the result of the suit, does not alter the rule.

Adhering to the former rule are numerous New York decisions. In *Joy v. Diefendorf,* 130 N. Y. 6, 28 N. E. 602, 27 Am. St. Rep. 484, the court held that the question of the bank's purchase of a promissory note depended entirely upon the evidence of its cashier, and that his relation to the bank and his interest in the transaction brought him within the rule that the credibility

of a party or an interested witness must be a question for the jury to determine. The facts there were very similar to the case here. The trial court directed a verdict for the plaintiff, which was held to be error. See, also, *Canajoharie National Bank v. Diefendorf,* 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676; *Elwood v. Western Union Telegraph Co.,* 45 N. Y. 549, 6 Am. Rep. 140; *Honegger v. Wettstein,* 94 N. Y. 252; *Gildersleeve v. Landon,* 73 N. Y. 609; *Koehler v. Adler,* 78 N. Y. 287; *Kavanagh v. Wilson et al.,* 70 N. Y. 177; *Gaff v. Greer et al.,* 88 Ind. 122, 45 Am. Rep. 449; *Murphey v. Virgin,* 47 Neb. 692, 66 N. W. 652; *Woodin, Adm'r, v. Durfee,* 46 Mich. 424, 9 N. W. 457; *Goodman et al. v. Ford,* 23 Miss. 592; 1 Greenleaf on Evidence (15th Ed.) 10.

In *McNight v. Parsons,* 136 Iowa, 390, 113 N. W. 858, 22 L. R. A. (N. S.) 718, 125 Am. St. Rep. 265, it is said:

"The testimony of the cashier of the bank that he or the bank purchased the note for value before maturity, even though he be not disputed by any other witness to the transaction, is not necessarily sufficient to enable the court to say, as a matter of law, that he received it in good faith. Such evidence does not negative notice or knowledge on the part of other officers of the bank. Moreover, the bank being an interested party, the credibility of the testimony of the cashier was a matter for the jury to pass upon in the light of all the facts and circumstances surrounding the matter under inquiry. In *Joy v. Diefendorf,* 130 N. Y. 6, 28 N. E. 602, 27 Am. St. Rep. 484, the plaintiff sought by his own evidence to prove the circumstances attesting good faith of his possession of the note; and in *Bank v. Diefendorf,* 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676, the bank gave like evidence by its cashier, and it was held in each case that, even though undisputed, the credibility of such evidence and its sufficiency to satisfy the burden of proof resting upon the plaintiff were matters for the jury, and not a question of law to be disposed of by the court. See, also, *Elwood v. Telegraph Co.,* 45 N. Y. 549, 6 Am. Rep. 140. It follows therefore that, so far as plaintiff's case rested on the indorsement of the note from Bigler & Sons to the bank, the motion to direct a verdict was improperly sustained."

The opinion follows the rule anounced in the New York cases, several of which are cited with approval. Where a case is submitted to the jury, it is error for the court to refuse to instruct that the jury has the right to consider the interest of a

party when weighing his evidence. *Hill v. Sprinkle,* 76 N. C. 353; *Dean v. Met. Elevated Ry. Co.,* 119 N. Y. 540, 23 N. E. 1054, and cases cited.

The testimony of the witness Swisher in this case is not of that positive and conclusive character that warranted the court in directing the jury to return a verdict for the plaintiff, based thereon. Where the only testimony upon a material issue is that of an interested party, and such testimony is inconsistent or contradictory, unreasonable or improbable, and where the jury may draw inferences therefrom unfavorable to plaintiff or defendant, as the case may be, the court should never direct a verdict but should submit to the jury all controverted questions of fact, under proper instructions. It is not necessary to the successful impeachment of a witness that other witnesses be produced; his own interest and bias, inconsistent, unreasonable, or improbable testimony may of itself furnish the highest evidence of its own unworthiness.

The question whether or not the Rhode Island Company was indebted to the bank was important; for, if it was not so indebted, then the plaintiff could not maintain its action. The bills of exchange were delivered to the bank as collateral security for an alleged original indebtedness of $2,500 owing by the Rhode Island Company to the bank, and it certainly was a proper defense for the defendant to show, if he could, that not only this indebtedness or any renewals thereof, in whole or in part, were paid to plaintiff, but that the Rhode Island Company was not, in fact, indebted to the bank in any sum.

The rule is important, but not inconsistent with honesty and fair dealing. The rights of those acquiring negotiable paper in good faith for value before maturity are entitled to and should receive the highest consideration. It does not follow that these rights are so sacred that the holders thereof may not, in proper cases, be required to show that their relations in connection therewith are legitimate and entered into in entire good faith. The rule adds to, rather than detracts from, the protection that commercial paper should receive, and, at the same time, protects the makers thereof, who may have a defense against the payee.

The judgment of the trial court should therefore be reversed, and the cause remanded.

By the Court: It is so ordered.

All the Justices concur.