# W. A. HILL v. UNITED STATES FIDELITY AND GUARANTY COMPANY. —348 S. W. (2d) 512.

Middle Section at Nashville.   March 3, 1961.

Certiorari Denied by Supreme Court July 26, 1961.

James W. Buckner, Murfreesboro, for appellant.

Goodpasture, Carpenter, Dale & Woods, Wirt Courtney, Jr., Nashville, for defendant.

## I

SHRIVER, J.  Complainant W. A. Hill filed an original bill in the Chancery Court at Murfreesboro, Tennessee, seeking to compel the defendant U. S. F. & G. Company to pay a judgment rendered against him in the Court of General Sessions of Rutherford County in favor of Courier Printing Company, Inc., said judgment being in the total amount of $938.64 and costs.

Complainant asserts that defendant is liable for said judgment under a policy of liability insurance issued by the defendant to him.  Hence, this is a suit to construe the terms of an insurance policy following a denial of coverage by the insurer.

The defendant denies liability by reason of an exclusion clause written into the face of the policy and the Chancellor, after hearing the cause on oral proof and documentary evidence, found that said exclusion clause was applicable and, therefore, dismissed the complainant's bill at his costs.

From this action of the Chancellor the complainant appealed and has assigned errors.

## II

Complainant, W. A. Hill, is a general contractor in Murfreesboro, Tennessee, and performs some work as an electrical contractor.

On or about April 21, 1958 the defendant insurance company isued to the complainant a policy of liability insurance which was in force at the time the question in controversy herein arose.

Among other things this policy of insurance obligated the defendant to pay on behalf of the complainant, within certain limits, all sums which the complainant became legally obligated to pay as damages because of an injury to or destruction of property by accident in the performance of his work as a contractor.

Among its provisions, however, is an exclusion clause to the effect that the policy does not afford coverage to the complainant for injury to or destruction of "Property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control * * *."

In May 1958 complainant was engaged to rewire certain electric motors which were part of the printing equipment owned by the Courier Printing Company, Inc.

The work to be done by complainant consisted of running electrical wires from a four hundred ampere main control panel mounted on the wall of the building to some twenty-six electric motors which operated or powered the printing presses to which said motors were attached.

After connecting the electric motors to the main control panel the complainant found it necessary to start the motors in order to test their direction of rotation and after entering into his said employment the complainant rewired and tested five such motors without incident. The power-transmission belts which were attached to the

motors and the presses in each instance were relaxed or loosened on the motors and the attached presses were not affected or disturbed.

The complainant then wired the sixth motor and, with the intention of testing the rotation of the motor but without the intention of disturbing the printing press, he started or activated the motor, whereupon, it developed that the power-transmission belt on this motor had not been relaxed or loosened, hence, the activation of the electric motor also started the press in motion causing the bed of the press to run over some foreign object which was therein and which resulted in damage to the press. The publishing company sued the complainant Hill for this damage and recovered a judgment.

It is pointed out by counsel for the defendant that the printing press and motor constitute one unit not separately affixed to the premises but kept in place by its own weight and that the motor was purchased with the press and as a part of it. The particular motor was specifically designed for the press to which it was attached and had a certain ratio for the machine so that any other motor would have had to be adapted to the press if used thereon. The motor was physically connected to the press frame with bolts. There is a pulley on one side and a sprocket drive on the other side of the motor going into the press, and the electric current which powers the machine does not enter the motor directly but goes into a box on the left side of the press frame, is connected to controls at two other locations on the press frame, and then comes out of the press into the motor. The start and stop buttons and the regular buttons are not on the motor but are on the press frame.

We think the above conclusions are well supported by the record.

The Chancellor in his findings of fact which are made a part of the record stated that the motor was mounted on the frame of the press and fastened to it by bolts and the motor could be disengaged from the press by loosening certain bolts and leaning the motor toward the press, thereby lessening the tension on the belt, and that according to the complainant he had wired in several presses before working on the one that was damaged, and these, at his request, had been disconnected from the motors by the employees of the Printing Company. However, he pointed out that this testimony is at variance with a written statement given an agent of the defendant in which the complainants said that he himself had disengaged the other presses. He explained this contradiction by saying that he did not give sufficient attention to the wording of the statement that he signed and that he didn't sign the statement under oath.

The written statement referred to above signed by the complainant is in part as follows:

"This damaged press was the fifth one that I had wired. On all the others I would first disconnect the belt and then start the motor to see if it was operating correctly."

The Chancellor's memorandum continued as follows;

"Determination of this case is dependent upon the applicability of an exclusion of coverage of 'property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control.' Property merely incidental

to the property on which the work is performed by the insured is not within the exclusion, while property that is under the supervision of the insured, and is a necessary element of the work involved, is within the exclusion. 62 A. L. R. 2nd., 1248, 1251. Here the printing press was a necessary element of the work involved. While complainant contends that he was employed to wire the motors, as distinguished from the presses, it cannot be disputed that his job was to wire the motors so that they would run the presses. The court is of the opinion that complainant's contract with Courier contemplated that complainant was to exercise care and control over the motors to the extent necessary to make them function properly. Because of the manner of attachment, this care and control necessarily extended to the presses themselves. Complainant did in fact exercise control over the presses that were previously wired in, by causing them to be disengaged from the motors. Whether he performed the task himself or through the agency of Courier employees, the fact remains that it was done under his direction.

"As the policy does not cover the damaged press, the bill will be dismissed at the cost of complainant.

"/s/ Knox Bigham
"Chancellor."

## III

### Assignments of Error

The two assignments are to the effect that the Chancellor erred in his findings and conclusions of fact in that the said findings are contrary to a clear preponder-

ance of all the evidence and that it was error to find as he did that the printing press, which was damaged, was not merely incidental to the property on which the complainant was performing work but was in the care, custody or control of complainant within the meaning of this exclusion clause in complainant's policy.

## IV

We think the exclusion clause of the policy which provides that said policy does not offer indemnity for damage to "property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control", is clear and unambiguous and, as has been stated in many cases, the Courts will not create an ambiguity where none exists. See State Automobile Mutual Insurance Company v. Connable-Joest, Inc., 174 Tenn. 377, 125 S. W. (2d) 490; Sam Finley, Inc., for Use and Benefit of Fidelity & Casualty Co. of N. Y. v. Standard Accident Ins. Co., 41 Tenn. App. 417, 295 S. W. (2d) 819; Brown v. Tennessee Auto Insurance Company, 192 Tenn. 60, 237 S. W. (2d) 553; Edwards v. Travelers Indemnity Company, 201 Tenn. 435, 439, 300 S. W. (2d) 615.

Language similar to that involved here has been construed by courts in a number of jurisdictions and has generally been held to be clear and free from ambiguity. See International Derrick and Equipment Company v. Buxbaum, 240 F. (2d) 536, 62 A. L. R. (2d) 1237 and Maryland Casualty Company v. Holmsgaard, 10 Ill. App. (2d) 1, 133 N. E. (2d) 910. Also see Sam Finley, Inc. for Use and Benefit of Fidelity & Casualty Co. of N. Y. v. Standard Accident Ins. Co., supra, where this Court construed the word "Control" in an insurance policy.

Also see Brown v. Tennessee Auto Insurance Company, supra, referred to and quoted from in Sam Finley, Inc., for Use and Benefit of Fidelity & Casualty Co. of N. Y. v. Standard Accident Ins. Co.

The case of Hardware Mutual Casualty Co. v. Mason, etc., 2 Cir., 194 F. (2d) 173, presents an interesting factual situation somewhat analogous to the case at bar and we think, in principle, supports the Chancellor's decree herein.

On the whole, we are convinced that the evidence does not preponderate against the finding of facts by the Chancellor and that he correctly construed and applied the exclusion clause in question.

Let the assignment of error be overruled and the judgment of the Chancellor be affirmed.

Affirmed.

Hickerson and Humphreys, JJ., concur.