MID-CONTINENT CASUALTY COMPANY, a corporation, Plaintiff in Error,

v.

PEERLESS BOILER & ENGINEERING COMPANY, a corporation, Defendant in Error.

No. 40184.

Supreme Court of Oklahoma.

June 30, 1964.

Rehearing Denied Nov. 10, 1964.

Application for Leave to File Second Petition for Rehearing Denied Jan. 12, 1965.

Looney, Watts, Looney, Nichols & Johnson, by Clyde J. Watts, Oklahoma City, for plaintiff in error.

John C. Moran, Oklahoma City, for defendant in error.

HALLEY, Vice Chief Justice.

This action was commenced by plaintiff, Peerless Boiler & Engineering Company, against the defendant, Mid-Continent Casualty Company, for damages resulting from an explosion on April 18, 1959, at Gretna, Louisiana. Plaintiff's petition alleged and defendant's answer admitted that a boiler explosion occurred at that time and place. Prior to trial plaintiff repaired all property damaged in the explosion. Plaintiff was insured by defendant's comprehensive liability insurance policy which provided, among other coverages, under "Insuring Agreements":

"Coverage D—Property Damage Liability—Except Automobile: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

The policy also provided under "Exclusions":

"This policy does not apply:
*　*　*　*　*　*

"(j) under coverage D, to injury to or destruction of * * * (3) * * * property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control, * * *."

Plaintiff sold the 36,000-lb. per hour Springfield Packaged Water Tube Boiler to Continental Oil Company (hereafter called Continental) on November 20, 1958. It was to be delivered F.O.B. Gretna, Louisiana. Throughout the remainder of this opinion the "boiler unit" will be referred to as one component part of the Springfield Boiler and the "burner and control unit" will be referred to as another component part. The boiler unit was shipped to Continental without the burner and controls unit. Continental installed the boiler unit on its foundation at its refinery in Gretna. Later, approximately three days before the explosion, two of plaintiff's employees went to Gretna to attach the burner and controls unit to the boiler unit. The burner and controls unit had eight bolt connections to attach it to the boiler unit. No part of the burner and controls unit extended physically into the boiler, but it was set against it and fastened by eight bolts at an opening provided therefor on one end of the boiler. The burner contains a fan which creates a forced draft to cause the flame to go from the burner and controls unit into the boiler unit when the Springfield Boiler is operated.

The facts in this case were undisputed. Plaintiff presented all the evidence. During the trial defendant admitted liability under its insurance policy for damage to property in the amount of $2,050.11, which was all the property damaged except the burner and controls unit and the boiler unit. At the close of plaintiff's evidence defendant demurred to the evidence. The demurrer was overruled. Defendant rested without presenting any evidence. Plaintiff's motion for directed verdict for $2,050.11 was sustained. Defendant moved for a directed verdict as to all items of damages except those previously admitted. Defendant's specific grounds for this motion for directed verdict were that the burner and controls unit was within the care, custody and control of plaintiff, and that the boiler unit was within the care, custody and control of plaintiff, at the time of the explosion. The parties stipulated that the damages to the burner and controls unit amounted to $7,-859.65, and that the damages to the boiler

unit were in the amount of $16,975.16. The trial court overruled defendant's motion for directed verdict and submitted to the jury the issues of defendant's liability for the damages to the burner and controls unit and the boiler unit on two interrogatories. The jury answered the two interrogatories with findings that the burner and controls unit was under plaintiff's care, custody or control, and that the boiler unit was not under plaintiff's care, custody or control, at the time of the explosion. Based on these findings together with the directed verdict for plaintiff as mentioned above, the trial court entered judgment for plaintiff in the sum of $19,025.30. Defendant filed a motion for new trial which was overruled, and defendant appeals.

■ Defendant contends that the trial court erred in failing to direct a verdict in its favor on the issue of damage to the boiler unit, because the undisputed evidence showed (in the language of the exclusion clause of the insurance policy) that the boiler was "property in the care, custody or control of the insured or property as to which the insured for any purpose [was] exercising physical control." We agree with defendant's contention.

Neither party cites any cases in which this Court has interpreted the language "care, custody or control" or "physical custody for any purpose" in connection with insurance policy provisions. They do, however, cite the annotation on the subject at 62 A.L.R.2d 1242, and each party relies on the holdings of certain cases cited therein. The annotation lays down certain guidelines that courts have used when considering this type of exclusion clause:

1. Some courts say the exclusion clause is ambiguous and will be construed most favorably to the insured; other courts say the exclusion clause is clear and unambiguous and must be given the plain and ordinary meaning of the terms used.

2. The majority of courts construe the clause as referring to possessory han-dling of the property as distinguished from proprietary control.

3. The extent of control is an important factor in determining whether the requirement of the exclusion clause is satisfied.

■ We will briefly discuss these guidelines. First, we find that the language used in the policy is clear and that it must be given the plain and ordinary meaning of the terms used. Maryland Casualty Co. v. Holmsgaard, 10 Ill.App.2d 1, 133 N.E.2d 910; International Derrick & Equipment Co. v. Buxbaum (C.A.3rd Cir.), 240 F.2d 536, 62 A.L.R.2d 1237.

■ Second, we follow the majority of courts in holding that the language of the exclusion clause must be construed as referring to possessory handling of the property, rather than requiring proprietary control. See cases cited at 62 A.L.R.2d 1245 (§ 4).

Third, the extent of control should be determined in order to decide whether the requirement of the exclusion clause is satisfied. The undisputed evidence in the instant case, in addition to that which we have related above, is that at the time of the explosion plaintiff's two employees were the only ones working with and immediately supervising the Springfield Boiler. They had fastened the burner and controls unit to the boiler unit by means of bolts. Immediately prior to the explosion they were attempting to adjust the pilot flame so that it would burn properly when the burner was operated at "full load", that is, when the burner flame was injecting the maximum capacity of heat into the boiler unit. They lost the pilot flame and attempted to shut off the forced draft burner. Plaintiff's employee testified that he momentarily relaxed the contact with the control button and that the unit attempted to ignite when there was gas in it. The explosion resulted.

■ This evidence clearly shows that plaintiff was exercising possessory control of the boiler unit as well as the burner and controls unit. Plaintiff was also exercising

exclusive physical control of the burner and controls unit and the boiler unit. Plaintiff argues that its employees testified that there was no necessity to use the boiler unit in testing the burner and controls unit. The fact remains, however, that they were using it and that they testified that such was one method of making the tests which they were making at the time of the explosion. It was necessary to the work in the manner they were doing it. The purpose of adjusting and testing the burner and controls unit was to allow it to properly fire the boiler unit. All of the evidence in the instant case was that the boiler unit was physically controlled by and under the immediate supervision of the insured as a necessary element of the work being performed, and there was no evidence that the boiler unit was merely incidental to the property on which plaintiff's work was being performed. Hill v. United States Fidelity & Guaranty Company, 48 Tenn.App. 419, 348 S.W. 2d 512; Madden v. Vitamilk Dairy, Inc., 59 Wash.2d 237, 367 P.2d 127. There were thus no triable issues of fact to submit to the jury as to plaintiff's care, custody or control of the boiler unit. P & M Stone Co. v. Hartford Accident & Indemnity Co., 251 Iowa 243, 100 N.W.2d 28. The trial court erred in failing to sustain defendant's motion for directed verdict as to the damages to the boiler unit. The judgment of the trial court must be reversed with directions to sustain such motion. Plaintiff states in its brief that defendant has paid the amount of the directed verdict in favor of plaintiff ($2,050.11), and plaintiff did not appeal from the judgment entered against it on the damages to the burner and controls unit. Therefore our decision herein disposes of the only issue pertinent to this appeal.

Reversed with directions.

BLACKBIRD, C. J., and DAVISON, JACKSON and IRWIN, JJ., concur.

JOHNSON, WILLIAMS and BERRY, JJ., dissent.

WILLIAMS, Justice (dissenting).

I respectfully dissent to the opinion of the majority for the reason that therein, to my notion, this Court assumes the function of the jury in making a fact determination, and in resolving the issues in the case.

The majority finds that "[a]ll of the evidence in the instant case was that the boiler unit was physically controlled by and under the immediate supervision of the insured as a necessary element of the work being performed, and there was no evidence that the boiler unit was merely incidental to the property on which plaintiff's work was being performed." I cannot agree with such statement in view of the evidence hereinafter set forth.

Mr. Ware, president and principal owner of plaintiff corporation, testified that before the boiler here involved left Oklahoma City it was inspected by representatives of Continental Oil Co.; that certain tests were conducted to determine if it would operate properly; that the burner and control unit which normally would have been attached to the boiler by plaintiff at its plant in Oklahoma City was late in arriving at its plant and at Continental's request the boiler was shipped to Continental in Louisiana, without the burner and control unit having been attached thereto, on January 20th; that plaintiff was paid in full therefor on February 10; that when Continental received such boiler, it attached it to a concrete foundation Continental had prepared; that Continental did the piping necessary to connect the boiler to its system; that Continental did the electric wiring, erected smoke stacks, installed boiler feed pumps, steam lines and miscellaneous valves and fittings, in connection with making the boiler operative; and that when the plaintiff received the burner and control unit for the boiler in question it was transported to Louisiana by plaintiff's employees, Cheek and Steiger.

The evidence was of further effect that the burner and control unit was attached

by bolts through the wall of the sheet metal building hereinafter described to the boiler unit, but housed in that sheet metal building which was separate from but attached to the boiler. The back wall of that building separated such burner and control unit from the boiler. It was in and about this building that Cheek and Steiger were working and observing the operation of the pilot light and the burner and control unit immediately prior to and at the time of the explosion here involved.

Mr. Steiger testified that when he and Cheek reported to the job in Louisiana there was a Continental safety man there; that before they could light a torch the area had to be checked by the safety man and such person told them the area in which they could cut and weld; that on the day before the explosion, employees of Continental were working "all around the boiler and some on it, up on top of the boiler" and that "four or five" were "setting some pumps and hooking up odds and ends there"; that if he "had gotten that pilot working" he "would have been done".

Both Steiger and Cheek testified, of effect, that when they were working on the pilot that the fire from the burner had to go some place and it went into the firebox; that if the controls had not been attached to the boiler that in testing the pilot light the flames from the burner would have gone into the atmosphere. There was no testimony that in the testing of the burner and control unit such had to be attached to the boiler. Rather, the testimony was that the boiler was not needed for the testing.

Mr. Ware testified:

"Q: Mr. Ware, I will ask you if it is necessary to properly check the control system that you were installing or checking on this unit here, is it necessary to use the boiler at that time?

"A: No, it is not necessary. The control system can be checked out either by air or gas, and your current, electrical current, can be checked out

without being attached to the boiler whatsoever. In fact, these burners are adaptable to many operations other than boilers.

"Q: Are any of the controls themselves in the boiler?

"A: No."

\* \* \* \* \* \*

"Q: I understand. But just what did you say to Applegate, and what did he say to you that modified the original agreement?

"A: I agreed that I would have our men check out the control system down there, not to exceed a total of five days, including travel time."

\* \* \* \* \* \*

"Q: Was the boiler a necessary component part to check the controls?

"A: No, it wasn't."

\* \* \* \* \* \*

"A: The boilers had nothing to do with it, the boiler was inoperative at the time our men were down there checking out the control system."

Mr. Cheek, a graduate mechanical engineer employed by plaintiff, testified:

"Q: (Mr. Moran) Mr. Cheek I will ask you then, if in doing the work and conducting the tests you were doing on Saturday afternoon, April 18, 1959, if it was necessary that in conducting those tests, to use the boiler?

"A: No, sir."

\* \* \* \* \* \*

"Q: And to that extent, that fairly was in your care. You would not work on your part until you inspected the furnace part of the boiler itself; wasn't that part of your job?

"A: It wasn't in my care. I would have inspected it just as a matter of routine to make sure there wasn't anything in it, as far as the unit being under my care, it wasn't under my care."

Mr. Steiger, an employee of plaintiff's who was assisting Mr. Cheek in the test-

ing of the controls at the time of the explosion, testified that all the controls on the boiler had been tested prior to the day of the explosion.

In the case of Moore v. First National Bank, 30 Okl. 623, 121 P. 626, in the fourth paragraph of the syllabus, we said:

"Where the only testimony upon a material issue is that of an interested party and such testimony is inconsistent or contradictory * * * and where the jury may draw inferences therefrom unfavorable to plaintiff or defendant, as the case may be, the court should * * * submit to the jury all controverted questions of fact under proper instructions".

In the instant case, as set out in this dissent, there was much evidence from which the jury could and did, judging from its verdict, conclude that at the time of the explosion the boiler was not under the care, custody and control of the plaintiff.

This Court has many times held that the credibility of witnesses and effect and weight to be given to conflicting or inconsistent testimony are fact questions to be determined by the trier of facts and are not questions of law for this Court on appeal. See West's Oklahoma Digest, Trial, and Appeal and Error, and cases cited thereunder.

The circumstance that plaintiff's employees may have had access to the boiler on Friday and could have had access thereto on the day of the explosion is not decisive of the question of whether or not the boiler was in plaintiff's care, custody and control at the time of the explosion. See the case of Hardware Mutual Casualty Co. v. Crafton, Ark., 233 Ark. 1020, 350 S.W.2d 506, and cases cited therein.

As hereinbefore noted, Continental had accepted and paid for the boilers two months prior to the explosion. Further, it had made many of the attachments to the boilers that were necessary for their proper functioning and as above recited,

had built the sheet metal building separately housing the burner and control unit.

The majority opinion does not set forth any evidence showing that plaintiff was exercising control over the boiler at the time of the explosion. As previously noted in this dissent, the testimony was that on the day before the explosion, Continental had four or five men working on this and another boiler. Certainly, it would seem that plaintiff should not be charged with or found to have been exercising possessory or physical control over the boiler merely because the burner and control unit was attached to the boiler.

Indeed there was no testimony introduced to show that plaintiff's employees, Cheek and Steiger, or either of them, were in any manner on the day of the explosion working on the boiler or, as above stated, that the presence of the boiler was required in their work of testing the burner and control unit.

In the case of Maryland Casualty Company v. Jolly, 67 N.M. 101, 352 P.2d 1013, 1016, the Supreme Court of New Mexico stated:

"* * * Where, however, the damaged property or premises were merely incidental or adjacent to the contracted object upon which work was being performed by the insured, such property is not within the care, custody or control of the insured even though he might be permitted access thereto during the performance of his contract. Thomas W. Hooley & Sons v. Zurich Gen. Acc. & Life Ins. Co., 1958, 235 La. 289, 103 So.2d 449, 67 A.L.R.2d 1078; Boswell v. Travelers Indemnity Co., 1955, 38 N.J.Super. 599, 120 A.2d 250; Maryland Casualty Co. v. Hopper, Tex.Civ.App., 1950, 237 S.W.2d 411. We have examined these cases and find the principles sound. See also the annotation appearing in 62 A.L.R.2d 1242."

In the case of Boswell v. Travelers Indemnity Co., 38 N.J.Super. 599, 120 A.2d 250, 255, is the following language:

"We have an entirely different case here. The heat exchange unit under repair was firmly attached to the owner's realty, and was functionally a part thereof. In Maryland Casualty Co. v. Hopper, 237 S.W.2d 411 (Tex.Civ. App.1950), the insured had undertaken to lay flow lines connecting an oil well to a battery of two oil storage tanks, and to lay a pipeline from the gathering pipeline system to the tanks. One of the tanks exploded when an employee of the insured was heating a pipe in order to bend it, close to the tank. In holding that the tank was not within the insured's 'care, custody or control,' the court said that considering the policy in its entirety, there could be no question but that its purpose was to protect the insured in his business of oil well servicing against accidental loss for which it might become liable because of injury to or destruction of the property of others. It noted that the policy made no specific designation of the premises covered—and that is the case here. The court held that if the description of hazards was to be given any effect at all, it must necessarily cover any property used by the insured in his business or necessary or incidental thereto. Noting that the tank in question was firmly attached to the realty so as to become a part of it, the court stated that 'Certainly it could not have been contemplated by the owners * * * that such real estate should be placed in the care, custody or control of appellee during his operations. He was merely permitted to use the tanks * * * for the purpose of accomplishing the work he was employed to do.' 237 S.W.2d, at page 416. So here as to the heat exchange unit.

"Similarly, where the insured's workmen were making repairs at the owner's premises, it was held that the premises were not in the 'care, custody or control' of the insured. A. T. Mor-ris & Co., Inc. v. Lumber Mutual Cas. Ins. Co. of N. Y., 163 Misc. 715, 298 N.Y.S. 227 (Mun.Ct.1937); Cohen v. Keystone Mutual Cas. Co., 151 Pa. Super. 211, 30 A.2d 203 (Super.Ct. 1943); Rex Roofing Co., Inc. v. Lumber Mutual Cas. Ins. Co. of N. Y., 280 App.Div. 665, 116 N.Y.S.2d 876 (App.Div.1952). Clearly, plaintiff had no care or custody of the heat exchange unit as such, nor did he have control over it in the sense that a person who has personal property in his possession, such as an automobile, may be said to have control of it.

"Plaintiff was repairing the heat exchange unit at the owner's premises. If anyone had 'care, custody or control' over the damaged unit was the owner, acting through its representatives Petroff, who as maintenance engineer had general supervision over all parts of the building."

As hereinbefore shown, Continental had accepted and paid for the boilers, and its employees had been doing the work necessary for the boilers to become a functioning part of Continental's operations. Any further tests of the boiler would be no concern to plaintiff. In the instant case, as in the Boswell case, plaintiff by its policy with the insurer sought protection against accidental loss for which it might become liable because of injury to or destruction of the property of others. In this case the subject boiler was the property of Continental at the time of the explosion and, as above shown, was affixed to and a part of its real estate.

I consider the following language used by this Court in the case of St. Louis-San Francisco Railway Co. v. Fox, Okl., 359 P.2d 710, 714, 715, 83 A.L.R.2d 1318, most pertinent to the instant case:

"The defendants offered no evidence in their behalf but relied solely upon their demurrers to the plaintiff's evidence and their motion for a directed verdict, all of which were overruled."

* * * * * *

"We think that since the defendants stood on their demurrers and motions as previously shown, they are bound by the rule applied in actions of legal cognizance that if there is any competent evidence reasonably tending to sustain a jury verdict and judgment based thereon, such verdict and judgment will be affirmed by this court on appeal. * * *"

In my opinion the trial court properly submitted to the jury the issue of fact as to whether or not the boiler at the time of the explosion was under the care, custody or control of the plaintiff, or whether such boiler then constituted property as to which plaintiff (insured) was for any purpose exercising physical control. The jury having answered such question in the negative, the judgment of the trial court should be affirmed.

I am authorized to state that Mr. Justice JOHNSON and Mr. Justice BERRY concur in the view herein expressed.