FRANKLIN MAXEY JARMAN, Appellant, v.
EXPORT INSURANCE COMPANY, Appellee.
—439 S.W.2d 785

Middle Section. August 30, 1968.

Rehearing Denied September 16, 1968.

Certiorari Denied February 3, 1969.

Petition to Rehear Denial of Certiorari Denied March 3, 1969.

Second Petition to Rehear Denial of Certiorari Denied April 7, 1969.

246

John C. Tune, Jr., Nashville, for appellant.

Russell G. Lazenby, Jr., of Glasgow, Adams & Taylor, Nashville, for appellee.

PURYEAR, J. This is a suit for declaratory judgment filed by the appellee, Export Insurance Company, seeking a declaration of its rights and liabilities under a certain policy of aircraft insurance in which the appellant, Franklin Maxey Jarman, is the insured.

To the original bill, the appellant filed an answer and cross-bill in which cross-bill appellant admitted that the insured aircraft, being a Republic Seebee amphibian airplane, crashed and was damaged shortly after take off from Berry Field at Nashville, Tennessee, as a result of which it was substantially damaged. By such cross-bill the appellant sought to recover from the appellee, the amount of such damages, less certain deductible items. No claim for personal injuries was made in such cross-bill.

After the appellee filed its answer to such cross-bill the case was tried upon depositions before the Chancellor, Honorable Alfred T. Adams, as a result of which trial the Chancellor sustained the appellee's original bill, dismissed the cross-bill and adjudged that the policy of insurance issued by appellee did not provide coverage for the damage to appellant's airplane.

From the foregoing decree, the appellant has prayed and perfected his appeal to this Court and assigned errors.

The principal determinative question presented upon this is whether or not the loss to the aircraft was excluded under the terms and provisions of a certain exclusion clause in the policy, which provides as follows:

"This policy does not apply:

3. to any insured:

(a) who operates or permits the aircraft to be operated in any manner which requires a special permit or waiver from the Federal Aviation Agency, whether granted or not, unless this Policy is specifically endorsed to include such operation; (b) who operates or permits the operation of the aircraft, while in flight, unless its airworthiness certificate is in full force and effect; nor to any aircraft whose airworthiness certificate has been converted to the restricted or experimental category; (c) who operates or permits the aircraft to be operated for any unlawful purpose or any purpose other than as specified in the Declarations;"

The insured airplane was equipped with floats for landing on water and retractable landing gear for landing on land.

On or about June 5, 1966, at a point approximately ten miles east of the Municipal Airport, Nashville, Tennessee, the appellant had a forced landing in a plowed field, which resulted in some damage to the insured plane, including damage to the left wing float.

After an examination of the airplane and the making of certain repairs, an agent of the appellant procured from the Federal Aviation Agency an application and authorization for a ferry permit dated June 13, 1966, for permission to fly the aircraft to Municipal Airport. After this permit was issued, the airplane was then flown to Nashville Municipal Airport, where it remained for several months with the exception of one or two trial flights in the vicinity of the airport.

After the accident occurred on June 5, 1966, both wing floats were removed and on September 13, 1966, Max M. Wolke, a representative of the Federal Aviation Agency filed an application and authorization for a ferry permit which authorized the appellant to fly the insured aircraft from Nashville, Tennessee, to Somerset, Kentucky, the duration of which permit was "ten days" and the stated purpose "for repairs."

This application and authorization for ferry permit contains, under the heading "authorization", the following language:

"INSTRUCTIONS: Retain this authorization in aircraft for duration of flight. This is your authority to conduct the flight requested above. This permit is valid until landing is effected at the destination indicated in your request, provided the aircraft is flown by properly certified crew, is operated in accordance with applicable Civil Air Regulations, and in accordance with the following special limitations:

1. The carriage of cargo or persons other than the crew necessary for the purpose of the flight is prohibited.

2. Flight to be conducted under Day Visual Flight Rules only.

3. The purpose of this flight is for moving the above identified aircraft from Nashville, Tennessee to Somerset, Kentucky, where repairs can be more advantageously accomplished.

4. Flight over congested area is prohibited.

5. The aircraft will be inspected by a certified mechanic or repair station and a notation made below or

in the aircraft logbook that the aircraft is safe for the intended flight.

6. This authorization expires upon arrival at destination and is not valid after September 23, 1966.''

Under the heading ''Remarks'' there appears the following language:

''I have inspected the above identified aircraft and found it safe for the flight intended. Name (signed) James W. Dougherty, Cert. No. A & P 1429632 Dated 9-18-66.''

However, no flight was made pursuant to this ferry permit.

On September 22, 1966, an identical ''application and authorization for ferry permit,'' except for dates was also issued to the appellant. This latter permit expired on October 2, 1966, and the date that the aircraft was inspected, according to this application and authorization, was October 2, 1966.

On the morning of October 2, 1966, the appellant took off in said airplane, bound for Somerset, Kentucky, and, almost immediately after take off, the engine failed and the airplane crashed, resulting in damages to the aircraft of more than $6,500.00.

On September 8, 1966, the appellant wrote the following letter to an agent of appellee:

''Mr. John G. Hill
Manager
Aero Loss Service, Inc.
975 Interstate 10 North
Beaumont, Texas 77706

Dear Mr. Hill:

Many thanks for your August 25 letter. In connection with the estimate of the repair bill on the aircraft itself, the repair station that I had contemplated using seems to be having some organizational difficulty, and work that I thought was being done and information that I thought was being forwarded to you seems to have gone astray somehow.

On the 24th of September, I expect to fly this plane to Somerset, Kentucky and have an experienced Seebee repair shop conduct the necessary repair work to get the plane operating again.

I will stay in touch with you on this.

Thanks very much again for your note.

Sincerely,
s/s F. M. Jarman
F. M. Jarman.''

(P. 81 of the record)

The record does not indicate that the appellant received any reply to this letter.

It is insisted by the appellee that the damages sustained to the appellant's aircraft were occasioned by its operation under such circumstances as come within paragraph three of the exclusion provisions of the insurance policy, which paragraph three is hereinabove set forth.

It is insisted by the appellant that the aforesaid exclusion clause is not applicable and he is, therefore, entitled to recover of the appellee the amount of damages sustained to his aircraft, less certain deductible items.

In his first assignment of error, the appellant insists that the decree of the trial Court is contrary to law prevailing and established by precedent in Tennessee and other jurisdictions. This assignment is to vague and general. Therefore, it does not comply with Rule 12(2) of this Court and we must overrule it for that reason. State ex rel. Melton v. Nolan, 161 Tenn. 293, 30 S.W.2d 601.

In the second, third and fourth assignments, the appellant insists that the evidence preponderates against the decree of the trial Court.

In his fifth and last assignment, the appellant insists that the agent of appellee had actual knowledge of the intended flight and is thereby estopped to deny insurance coverage.

We will consider the second, third and fourth assignments together, since as we have heretofore stated, all three of them raise the general proposition that the evidence preponderates against the decree of the trial Court.

No insistence is made here that the flight of October 2, 1966, was "being made under a waiver", but the appellee does insist that the ferry permit under which the flight was made on October 2, 1966, constituted a "special permit" from the Federal Aviation Agency. No endorsement was made upon the policy to include a flight required to be made under a special permit and the appellant does not insist that such endorsement was requested or issued.

In his memorandum opinion, the learned Chancellor said that the letter of September 8, 1966, written by appellant to the appellee's agent would indicate that the appellant thought the aircraft in question needed repair-

ing and this supported the "purpose" stated in the application and authorization for ferry permit issued by Federal Aviation Agency for the flight from Nashville to Somerset.

The learned Chancellor disposed of the appellant's insistence by the following language in his memorandum opinion:

"All of the defendant's witnesses thought it was advisable, if not necessary, to procure the Ferry Permit for the flight to Somerset, Kentucky, and the representative of the Federal Aviation Agency who signed the Ferry Permit, dated September 13, 1966, and September 22, 1966, testified among other things:

'The airworthiness certificate is still in effect, but it's not valid and the aircraft will not meet the requirements of 43.13. So you issue the ferry permit or the authorization.'

and again—

'In other words, it makes it legal for him to move the aircraft in accordance with these present regulations, is what it amounts to.'

The Ferry Permit under which the flight was undertaken specifically restricted the operation of the aircraft and in the opinion of the Court it constituted a 'special permit' from the Federal Aviation Agency. No request was made by defendant and the policy was not specifically endorsed to include such operation. The Court is therefore of the opinion that the policy did not cover the aircraft when it was damaged at the time of its forced landing on October 2, 1966."

254

■ We agree with the foregoing conclusion of the Chancellor and, although the appellant insists and has offered some evidence to the effect that a ferry permit was not necessary in order for him to make the flight from Nashville to Somerset on October 2, 1966, this evidence is quite vague and does not preponderate in favor of appellant's insistence so as to overcome the presumption created by the fact that such a permit was applied for and obtained.

■ Ordinarily, an exclusion in a policy of insurance is a means employed by the insurer to protect itself from an additional risk or hazard against which it does not wish to insure without the payment of an additional premium.

The additional risk of loss involved in flying amphibian aircraft with the wing floats removed is indicated by the following evidence in the record:

"Q. And it is always true that many people use a Republic Seabee as just a water plane, or just a land plane?

A. Oh, yes. You may take off on the lake and land on the runway.

Q. But if you remove the * * *

A. (Interposing) Then you would have to operate only on the land.

Q. Might sink?

A. Yes, that's right."

(Rec. pp. 31, 32, Testimony of Max Wolke)

Another witness, Fred Bunyan, testified that much of the route from Nashville, Tennessee, to Somerset, Ken-

tucky, generally followed the course of a long lake and river.

We think it is reasonable to assume that the risk of loss from an emergency landing is increased, to some extent, when the emergency landing area available for such aircraft is limited to land, to the exclusion of bodies of water, such as lakes and rivers.

The airplane in question was being flown under a condition which created an additional risk against which the insurer specifically protected itself by the exclusion from loss incurred while the airplane was being operated in a manner which required a special permit from the Federal Aviation Agency.

■ Appellant's counsel cites many Tennessee cases which hold that if an ambiguity makes a policy susceptible to two interpretations such policy is to be construed favorably to the insured. Certainly, this is a well established rule of construction in our State, but it does not apply here because no ambiguity exists in the exclusion clause which is applied to the facts of this case.

In Hill v. United States Fidelity & Guaranty Co., 48 Tenn.App. 419, 348 S.W.2d 512, this Court said what has been said in many other cases, that the Courts will not create an ambiguity where none exists.

The second, third and fourth assignments of error are respectfully overruled.

The appellant's fifth assignment of error, appears to be related to the following language of the cross-bill:

"4. On September 8, 1966, cross-petitioner addressed a letter to the loss agent of the cross-defendant stating that it was his intention to transport the aircraft to

Somerset, Kentucky on September 24, 1966 for the purpose of repairs. Therefore, cross-petitioner alleges that cross-defendant had actual knowledge of the fact that the airplane was to be transported to Somerset, Kentucky for repairs and, possessed of that knowledge, took no action of any type to advise cross-petitioner that his coverage would be excluded under the terms of the policy stated in the original petition."

(Rec. pp. 12, 13)

This allegation in the cross-bill is not sufficient to plead estoppel and the evidence in the record in support of this insistence consists only of the letter of September 8, 1966, which has heretofore been quoted in this opinion.

The writing of this letter placed no obligation upon the appellee to advise or notify appellant that if the proposed flight mentioned therein was to be made in a manner which required a special permit from the Federal Aviation Agency, the flight would not be covered by the terms of the policy, unless a proper endorsement was added thereto. Appellee had the right to assume that the appellant was aware of the provisions of his policy.

The fifth assignment of error is respectfully overruled. All of the assignments having been considered and overruled, the decree of the Chancellor is affirmed. The appellant will pay all of the costs of this appeal.

Shriver, P. J. (M.S.), and Todd, J., concur.

## OPINION ON PETITION TO REHEAR

We have been presented with a petition to rehear, but such petition is simply a reargument of those issues and

contentions considered by this Court in preparing its original opinion.

All of these contentions were given full consideration by the Court and this Court feels no necessity to again review these questions.

No new argument is made, no new authority is cited, and no material fact is pointed out as overlooked.

Therefore, the petition to rehear is respectfully denied.