**VINSANT ELECTRICAL CONTRACTORS,**
**Petitioners,**

v.

**AETNA CASUALTY & SURETY COMPANY, Respondents.**

Supreme Court of Tennessee.

Nov. 24, 1975.

Calvin N. Taylor, Cheek, Taylor & Groover, Knoxville, for petitioners.

Robert R. Campbell, Hodges, Doughty & Carson, Knoxville, for respondents.

OPINION

HENRY, Justice.

The sole issue before the Court is the proper interpretation of the "Broad Form Property Damage Coverage" endorsement or rider to a comprehensive liability insurance policy. We granted certiorari because this is a matter of first impression in this jurisdiction.

I.

The facts are either stipulated or are as contained in the undisputed testimony of a single witness as set forth in a proper bill of exceptions.

Petitioner, an electrical contractor, was engaged to install or mount, two 100 ampere circuit breakers in a panel board or switchboard located in the West Town Mall, a Knoxville area shopping center, in order to connect an air conditioning system for service to an additional shopping center tenant. While so engaged, one of its workmen inadvertently deposited or dropped a socket wrench in such manner that it came in contact with two "buss" bars producing phase to phase contact and a shortage which caused the entire switchboard to burn and blow up.

The Court of Appeals described the switchboard thusly:

The switchboard in question was a unit composed of many interrelated and interdependent parts, a complex, multi-component collection of electrical wires, switches, breakers, conductors, buss bars, etc., used to receive and direct the proper flow of electricity. The various parts were connected together or immediately adjacent to each other so as to constitute

a collective unit called a "switchboard". The property being worked upon, and damaged or destroyed, was therefore a single item of property which, though composed of many parts, was clearly a unit of property within itself, self-contained and a single item.

We adopt this description and concur in the conclusion that the damaged switchboard was a single, self-contained item of property.

Claim was made for the resulting damage and liability was denied on the basis of the "broad form" exclusion. This suit resulted.

The Chancellor held that there was no coverage and the Court of Appeals concurred in that conclusion.

So do we.

II.

The policy contains the conventional "care, custody or control" exclusion providing that there is no coverage as to:

> . . . property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control.

1. The entire exclusion reads as follows:
   II. BROAD FORM PROPERTY DAMAGE COVERAGE (Excluding Completed Operations)
   A. The exclusions relating to property damage to (1) property owned, occupied or used by or rented to the insured or in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control and (2) work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are *replaced by the following exclusions (w) and (x)*:
   (w) to property damage
   (1) to property owned or occupied by or rented to the insured, or, except with respect to the use of elevators, to property held by the insured for sale or entrusted to the insured for storage or safekeeping,
   (2) except with respect to liability under a written sidetrack agreement or the use of elevators to

This exclusion, however, is substantially liberalized by a Broad Form Property Damage Coverage endorsement which removes and "replaces" the "care, custody or control" exclusion and substitutes therefor, to the extent here pertinent, an exclusion of liability for damage sustained on or in connection with:

> (d) *that particular part of any property,* not on premises owned by or rented to the insured,
>
> > (i) *upon which operations are being performed* by or on behalf of the insured at the time of the property damage arising out of such operation. (Emphasis supplied) [1]

Thus the issue presented is not whether petitioner had custody, care or control of the switchboard, for this is an irrelevant consideration. Our concern is limited to the meaning of the phraseology, "that particular part of any property . . . upon which operations are being performed."

This, of course, is a question of fact, and its determination will vary with the facts and circumstances of each particular case. It was the obvious intent of the insurance carrier to liberalize and expand coverage and the provision must be so construed. This conclusion is demanded by the fact

(a) property while on premises owned by or rented to the insured for the purpose of having operations performed on such property by or on behalf of the insured,
(b) tools or equipment while being used by the insured in performing his operations,
(c) property in the custody of the insured which is to be installed, erected or used in construction by the insured,
(d) that particular part of any property, not on premises owned by or rented to the insured,
(i) upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations, or
(ii) out of which any property damage arises, or
(iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured; . . .

that the exclusion is not standard but is incorporated by endorsement and only pursuant to the payment of additional premiums. No insurance company could, in good faith, charge, and no insured could, in good judgment, pay for, an endorsement that did not operate to provide additional coverage.

Under the factual situation in this particular case, we hold that the switchboard, in its entirety, or as a unit, is "that particular part" of the property "upon which operations are being performed." We cannot so construe this provision as to limit the exclusion to the precise and isolated spot upon which work was being done. Such a construction would lead to illogical and absurd results and would completely nullify the intent of the endorsement. An exclusion so limited could well result in being, in practical effect, no exclusion at all. Such would abort the whole purpose of the exclusion. It was designed to liberalize but not liquidate the exclusion.

Cases construing the conventional "care, custody or control" exclusion are only pertinent in that they demonstrate the patent deficiency of such provisions and serve to point out conditions which lead insurers to offer and insureds to demand a more realistic exclusion.

Such a case is *W. A. Hill v. United States Fidelity and Guaranty*, 48 Tenn.App. 419, 348 S.W.2d 512 (1961), wherein the Court was dealing with the conventional exclusion. Work was underway on motors which powered a series of printing presses and were connected thereto by belts. The insured attempted to loosen a belt in order to guard against activation of the presses. Apparently the belt was not sufficiently loose and, as a result, one of the presses was damaged. The Court held that coverage had been properly denied on the basis of the press being under the care, custody or control of the insured.

Had the insured in *Hill* been covered by a "Broad Form" exclusion, he would have prevailed since the motors were "that par-

ticular part" of the property upon which operations were being performed.

In summary we hold that the "Broad Form" exclusion was designed to give liberalized and expanded coverage, over, above and beyond that provided by conventional "care, custody or control" exclusion and that coverage under the exclusionary endorsement is dependent upon the factual situation.

The judgments of the Chancellor and the Court of Appeals are

Affirmed.

FONES, C. J., COOPER and HARBISON, JJ., and HYDER, Special Justice, concur.