J. B. HERBISON, d/b/a J. B. Herbison Painting Contractor, Appellee,

v.

EMPLOYERS INSURANCE COMPANY OF ALABAMA, INCORPORATED, Appellant.

Court of Appeals of Tennessee, Western Section.

Sept. 26, 1979.

Certiorari Denied by Supreme Court Jan. 28, 1980.

Julian P. Guinn, Guinn & Hawley, Paris, for appellee.

Richard L. Dunlap, III, Dunlap, Dunlap, Hessing & Neese, Paris, for appellant.

NEARN, Judge.

Suit was filed by the insured against the insurer in the Chancery Court of Henry County to recover under the terms of the insurance policy. The Chancellor decreed coverage and the insurer has appealed insisting that the policy affords no coverage in this instance.

The matter was tried below on stipulations. Accordingly, the record is small, but the problem presented is not.

Herbison is a painting contractor and contracted to paint certain ceilings for Emerson Electric Company on its own premises. Throughout the ceiling area to be painted was a system of fire sprinkler heads. In an attempt to prevent damage to the sprinkler heads, they were covered with aluminum foil wrap by Herbison. However, when the job was completed, 214 sprinkler heads were found to be paint damaged to such an extent that their replacement was required. The cost thereof was $1,374.21. Herbison paid the replacement cost and sought reimbursement from his insurer. The claim was denied and this suit resulted.

The comprehensive general liability policy issued by the defendant excludes from coverage:

"(3) property in the care, custody or control of the <u>insured</u> or as to which the <u>insured</u> is for any purpose exercising physical control;"

(underscoring indicates emphasized words in policy).

The Chancellor concluded that the exclusionary clause did not apply because the sprinkler heads "were never in the care, custody and control of the plaintiff nor did plaintiff ever exercise physical control over the sprinkler heads."

We respectfully disagree with the conclusion drawn by the Chancellor.

The very reason the sprinkler heads were covered by the contractor was because the contractor knew it was part of his job to be *careful* not to damage them. It was his contractual task to see that no harm came to them in the painting process. Also, when the contractor covered the sprinkler heads he exercised physical control over them. The contractor exercised that degree of physical control over them as required by his painting contract.

The purpose of this type of exclusionary clause is to avoid making the insurer a guarantor of the quality of the insured's workmanship. If the facts of this case were transposed to the ordinary home painting contract and with the assistance of a modicum of literary license, we would have the situation where the painter was a little sloppy and got white paint on the living room light fixture or a wood stained ceiling molding and called upon his insurer to reimburse him for the cost of going back and removing same. Ordinarily when any room paint job is done, it is understood that certain portions of the room are to be painted and certain portions are not to be painted. The "to be painted portions" and the "not to be painted portions" are for the purposes of the contract both in the care and custody of the painter although exactly opposite operations or tasks are to be performed on each of them. Both are necessary elements of the work involved.

What constitutes a necessary element of the work involved depends upon a factual analysis of each case presented.

Additionally, although it will not control every case, we believe that a significant consideration in attempting to fit situations such as this in some orderly precedential pattern is the legal basis of the claim that the owner had or would have had against the contractor. That is to say, would the owner's claim sound in tort or contract? If that claim would be more in the nature of one for breach of contract, there would be less likelihood of coverage under the conventional clause. However, if it would

sound more in tort, there would be more likelihood of coverage. There is no doubt in our minds that any claim that Emerson would have had against Herbison would be *ex contractu*.

We believe that our reasoning of this case follows that of the Supreme Court in *Vinsant Electrical Contractors v. Aetna Casualty & Surety Co.* (Tenn.1975) 530 S.W.2d 76 wherein the Court construed a "Broad Form Property Damage Coverage" and compared its fuller coverage to the lesser coverage afforded by the utilization of the exclusion clause that we have in this case. Also see *Hill v. United States Fidelity & Guaranty Co.* (1961 M.S.) 48 Tenn.App. 419, 348 S.W.2d 512.

For the reasons stated, we sustain the Assignment of Error and reverse the decree below.

Costs below and on appeal are adjudged against appellee.

Done at Jackson in the two hundred and fourth year of our Independence and in the one hundred and eighty-fourth year of our Statehood.

MATHERNE and SUMMERS, JJ., concur.